TED W. MITCHELL AND JAN MITCHELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7601–77, 11510–77.    Filed June 16, 1980.

*Lloyd Taylor*, for the petitioners.
*Woodford G. Rowland*, for the respondent.

CHABOT, *Judge:* Respondent determined deficiencies in Federal individual income tax and an addition to tax under section 6653(a)[1] (negligence) against petitioners as follows:

| Docket No. | Year | Deficiency | Addition to tax sec. 6653(a) |
|---|---|---|---|
| 7601–77 | 1975 | $1,149.47 | $57.47 |
| 11510–77 | 1976 | 1,275.92 | 0 |

The cases have been consolidated for trial, briefs, and opinion. The issue remaining for decision is whether petitioners are entitled to deduct expenditures for transportation, food, and lodging under section 162(a)(2).[2]

_____

[1]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.

[2]Respondent has conceded the addition to tax and all the other notice of deficiency adjustments.

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference.

When the petitions in these cases were filed, petitioners Ted W. Mitchell (hereinafter sometimes referred to as Ted) and Jan Mitchell (hereinafter sometimes referred to as Jan), husband and wife, resided in California.

Between January 15, 1959, and June 14, 1972, Ted was employed as a psychiatric technician by the State of California at Mendocino State Hospital, at Ukiah, Calif. About 1971, Ted began to work in the Alcoholic Rehabilitation Section at Mendocino State Hospital. On June 15, 1972, Ted transferred his employment to the Napa State Hospital, at Imola, Calif., which is near Napa, Calif. The occasion of the transfer was the closing of Mendocino State Hospital and the transfer of Ted's program to Napa State Hospital. At all times during Ted's employment at the two hospitals, he was classified as a full-time, permanent employee. Ted worked at Napa State Hospital until November 30, 1977, when he retired. If Ted had quit rather than accept the transfer to Napa State Hospital, his pension would have been less than what it was when he retired 5½ years later.

Ted moved to Ukiah in 1946, and Jan moved there in 1961; they were married in 1962. Jan had a series of jobs in Ukiah; she was employed there all during the years before the Court. During Ted's employment at Napa State Hospital, Jan maintained the family home at Ukiah. Ted's voter registration listed his address as the address of the family home in Ukiah. The Ukiah address also appeared on Ted's driver's license and automobile registration and on petitioners' income tax returns for 1975 and 1976. Ted had no intention of making Napa his permanent home.

Ukiah (and Mendocino State Hospital) are approximately 100 miles from Napa State Hospital. During his employment at Napa State Hospital, Ted lived at Ukiah on weekends and traveled to Napa for the work week. At Napa, he lived in a rented trailer. During 1975 and 1976, Ted had the following living expenses at Napa and travel expenses to and from Napa:

|  | 1975 | 1976 |
|---|---|---|
| Trailer space rental | $755.00 | |
| Trailer rental | 145.00 | |
| Food—$85 per month | 1,020.00 | |

| | | |
|---|---:|---:|
| Telephone | 77.22 | |
| Insurance on trailer | 37.00 | |
| Subtotal | 2,034.22 | [1]$2,589.54 |
| | | |
| Mileage—16,000 miles[2] at standard rate | 2,350.00 | 2,350.00 |
| Total | 4,384.22 | 4,939.54 |

[1] Details for 1976 are not available, but the parties have stipulated that the 1976 amounts are similar to those for 1975.

[2] The parties have stipulated as to the 100-mile distance between Ukiah and Napa State Hospital and as to the weekly round trips. Even if Ted took no vacations, this would appear to result in annual travel of about 10,000 miles. The record includes no explanation of the difference between this figure and the stipulated 16,000 miles of "travel to and from" Napa in each of the years before the Court.

## OPINION

Petitioners maintain that a taxpayer's "tax home" is the taxpayer's residence, at least while the period away from the residence is of temporary duration. Ted's residence was in Ukiah, and his stay at Napa State Hospital was temporary, petitioners assert, so Ted's "tax home" was in Ukiah. Respondent's position is that a taxpayer's "tax home" is the taxpayer's principal place of business, unless the employment at a place away from the usual residence is temporary, rather than indefinite. Ted's principal place of business was at Napa State Hospital, and his job there was indefinite, respondent asserts, so Ted's "tax home" was at Napa State Hospital. We agree with respondent.

Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 of the Internal Revenue Code of 1954 (sec. 262).[3] Section 162(a)(2)[4] expressly permits a taxpayer to deduct what might otherwise be personal expenses if all the following requirements are met (*Commissioner v. Flowers*, 326 U.S. 465, 470 (1946)):

[3] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

[4] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \* \*

(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *

(1) The expense is a traveling expense (this includes such items as transportation fares and food and lodging expenses incurred while traveling);

(2) The expense is incurred while "away from home"; and

(3) The expense is an ordinary and necessary expense incurred in pursuit of a trade or business.

The parties do not appear to dispute that Ted's expenses were paid or were "traveling expenses." Because of our disposition of the "away from home" issue, we need not discuss whether the expenses were "incurred in pursuit of business," an issue to which the parties briefly address themselves.

This Court has held that as a general rule "home," as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. E.g., *Daly v. Commissioner*, 72 T.C. 190, 195 (1979), on appeal (4th Cir., Aug. 15, 1979); *Foote v. Commissioner*, 67 T.C. 1, 4 (1976); *Garlock v. Commissioner*, 34 T.C. 611, 614 (1960). Since Ted's principal place of employment during the years in issue was at the Napa State Hospital, under the general rule, the vicinity of this hospital was his "tax home."

Petitioners rely on an exception to the general rule. Under this exception, a taxpayer's personal residence may be the "tax home" if the principal place of business is "temporary," rather than "indefinite." See *Peurifoy v. Commissioner*, 358 U.S. 59, 60 (1958).

A place of business is a "temporary" place of business if the employment is such that "termination within a short period could be foreseen." *Albert v. Commissioner*, 13 T.C. 129, 131 (1949). See *Michaels v. Commissioner*, 53 T.C. 269, 273 (1969). Or, viewed from the other side of the coin, an employment is for an "indefinite," "substantial," or "indeterminate" period of time if "its termination cannot be foreseen within a fixed or reasonably short period of time." *Stricker v. Commissioner*, 54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). "Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." *Kroll v. Commissioner*, 49 T.C. 557, 562 (1968). These are questions of fact (*Peurifoy v. Commissioner*, 358 U.S. at 60–61), as to which petitioners have the burden of proof (*Daly v. Commissioner*, 72 T.C. at 197).

At the beginning of the 2-year period before us, Ted had

worked at Napa State Hospital for 2½ years, and by the close of this period, he had been there for 4½ years. After the end of this period, Ted continued to work at Napa State Hospital for most of the next year, until his retirement. The record before us gives us no basis for concluding that Ted foresaw, or could reasonably have been expected to foresee, termination of his employment in the Napa area "within a short period" at any time during the years before the Court. We conclude that the *Peurifoy* "temporary" exception to the general "tax home" rule does not apply, and Ted's "tax home" for 1975 and 1976 was the general vicinity of the Napa State Hospital.

The Court of Appeals for the Ninth Circuit approaches these questions somewhat differently, but we conclude that it would reach the same result in the instant cases.

In *Coombs v. Commissioner*, 608 F.2d 1269 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976), the Court of Appeals took the opportunity to review its precedents on these questions. The Court of Appeals there stated its position that, "in general, as between various possible 'abodes,' the abode or at least the locale of the abode which is located in the vicinity of the taxpayer's principal place of business or employment, or as close thereto as possible, will be considered the taxpayer's tax home for purposes of the travel expense deduction of section 162(a)(2)." 608 F.2d at 1275. In *Wills v. Commissioner*, 411 F.2d 537 (9th Cir. 1969), affg. 48 T.C. 308 (1967), a professional baseball player maintained his family home in Spokane, Wash., while employed by the Los Angeles Dodgers. The Court of Appeals noted that Wills had spent only 138 days in Spokane during the first of the years there involved and only 96 days in Spokane during the other year. Despite the fact that Wills earned some portion of his income in Spokane, the Court of Appeals affirmed our holding that Spokane was not Wills' "tax home." 411 F.2d at 539–541. See *Coombs v. Commissioner*, 608 F.2d at 1275.

On the basis of the stipulations, we conclude that petitioners have not shown that Ted spent more than 2 days out of every 7 at Ukiah. Indeed, Ted's testimony suggests that the ratio might be closer to 2 days out of every 8. The remainder of his time, perhaps 250 days or more each year, was spent by Ted at Napa. Ted's work was at Napa.

Under the tests of *Wills* and *Coombs,* we conclude that Ted's

100 or so days a year in Ukiah are not sufficient to establish his abode there as his "tax home"; Ted's abode at Napa would be his "tax home" under the general rule of *Wills* and *Coombs*.

The Court of Appeals for the Ninth Circuit has established its own approach to the *Peurifoy* "temporary" exception to its general "tax home" rule. In *Harvey v. Commissioner*, 283 F.2d 491 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), the Court of Appeals set forth its rule as follows:

> An employee might be said to change his tax home if there is a reasonable probability *known to him* that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. * * * [283 F.2d at 495; emphasis in original.]

In *Wills v. Commissioner, supra,* the Court of Appeals summarized the foregoing *Harvey* rule; it then set forth its analysis of the facts in *Wills* as follows: "At the beginning of the period here in question, Wills had completed three successful seasons with the Dodgers and could reasonably expect this employment to continue, as it in fact did for a total period of seven years." 411 F.2d at 541. The *Wills* court distinguished *Harvey* as a holding "that the particular taxpayer had not changed his tax home where employment at the new station normally lasted only a few months." *Wills v. Commissioner, supra* at 541. See *Doyle v. Commissioner*, 354 F.2d 480 (9th Cir. 1966), affg. a Memorandum Opinion of this Court,[5] in which the Court of Appeals indicated that a 28-month period was sufficiently long to satisfy the *Harvey* "long period of time" test (354 F.2d at 482) and suggested that 9 months might be an appropriate general dividing line (354 F.2d at 483 n. 3). See *Stricker v. Commissioner*, 54 T.C. at 362. See also *Marth v. Commissioner*, 342 F.2d 417 (9th Cir. 1965), affg. per curiam a Memorandum Opinion of this Court.[6]

Petitioners, who have the burden of proof, introduced no evidence concerning Ted's expectations with respect to the duration of his employment at Napa State Hospital. By the start

[5]T.C. Memo. 1964–110.
[6]T.C. Memo. 1964–116.

of 1975, Ted's employment had already lasted 30 months. Petitioners have not shown that, under the *Harvey* test (as described in *Doyle* and applied in *Wills*), Ted did not understand that is was reasonably probable that his employment at Napa State Hospital would be for a long period of time. Nothing in the record suggests that Ted had any reasonable expectations (see *Marth v. Commissioner, supra*) other than that it was reasonably probable that this employment would last a long time. We conclude that under the *Harvey* test, Ted's abode at Napa was his tax home, his decision to retain his home at Ukiah was a personal choice, and his travel expenses between Napa and Ukiah are not deductible.[7]

The fact that Jan's Ukiah activities included earning income subject to tax does not affect the deductibility of Ted's expenses in dispute in the instant cases. *Daly v. Commissioner,* 72 T.C. at 196; *Foote v. Commissioner,* 67 T.C. at 6–7; *Tucker v. Commissioner,* 55 T.C. 783, 788 (1971).

On the one disputed issue, we hold for respondent.

To take account of respondent's concessions,

*Decisions will be entered under Rule 155.*

---

[7]See *Coombs v. Commissioner,* 608 F.2d 1269, 1275–1276 (9th Cir. 1979), where the Court of Appeals set forth its analysis as follows:

"In addition, when a taxpayer accepts employment either permanently or for an indefinite time away from the place of his usual abode, the taxpayer's tax home will shift to the new location—the vicinity of the taxpayer's new principal place of business. * * * In such circumstances, the decision to retain a former residence is a personal choice, and the expenses of traveling to and from that residence are non-deductible personal expenses. * * * [Citations omitted.]"