BILLY J. NEAL and JUDITH A. NEAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Neal v. Commissioner
Docket No. 153-80.
United States Tax Court
T.C. Memo 1981-407; 1981 Tax Ct. Memo LEXIS 336; 42 T.C.M. (CCH) 582; T.C.M. (RIA) 81407; August 6, 1981. *336 Held: Petitioner failed to prove that his employment as an ironworker in the construction of a nuclear power plant project was temporary in 1977, and, therefore, he is not entitled to deduct under section 162(a), I.R.C. 1954, automobile expenses incurred in traveling daily between his residence and place of employment. Harry P. Friedlander, for the petitioners. Richard Patrick, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 933 in petitioners' 1977 Federal income tax. After petitioners' concessions, the sole issue for decision is whether under section 162(a)[1] petitioners are entitled to deduct automobile expenses incurred by petitioner Billy *337 J. Neal in traveling between his residence and his place of employment each working day. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Billy J. Neal (hereinafter petitioner) and Judith A. Neal, husband and wife, resided in Phoenix, Arizona, when they filed their petition in this case. They filed their 1977 joint Federal income tax return with the Internal Revenue Service Center, Ogden, Utah. Petitioner is an ironworker and a member of the Ironworkers Local Union No. 75 in Phoenix, Arizona. Local Union No. 75 is a member of the International Association of Bridge, Structural, and Ornamental Ironworkers and is the bargaining agent for the union membership within the state of Arizona. Local Union No. 75 utilizes a job referral system under which its members are assigned to various jobs according to the position of their names on certain lists. The A list includes journeyman ironworkers who have resided in Arizona for the previous four years. The B list includes travelers, members of sister locals, who seek work in Arizona. The C and D lists include *338 workers, not qualified for either A or B list, who are looking for employment through Local Union No. 75. When a job becomes available, priority is given to those workers on the A list, followed by those on B, C, and D lists, respectively. Each list itself is operated on a first-in first-out basis, and therefore, a union member whose name appears at the bottom of a list will not be referred by the union to a job until all workers above him on that list have been referred. When seeking employment through his union hall, petitioner's name appears on the A list. On March 14, 1977, petitioner was hired as a journeyman ironworker by the Bechtel Power Corporation (hereinafter Bechtel) to work on the Palo Verde Nuclear Construction Project near Buckeye, Arizona (hereinafter Palo Verde Project). This employment was obtained through Local Union No. 75. Construction work on the Palo Verde Project commenced in May 1976. This project, one of the largest in the United States, involves the construction of a three unit nuclear generating facility which will produce electric power for the Arizona Nuclear Power Project. The facility was designed to be constructed in three separate units *339 with each unti containing approximately 10 buildings. At the initiation of construction, those units were expected to be completed by 1983, 1984, and 1985, respectively. Petitioner's initial job assignment at the Palo Verde Project was erecting reinforcing iron bars (rebar) for the walls of Auxiliary Building One. This job was completed in May 1977, at which time petitioner had the option of returning to the union hall and placing his name on the out-of-work list or finding other work with Bechtel at the project. After checking with the union and determining that no work was available through the hall, petitioner obtained his own employment, through a friend at the Palo Verde Project, as a rebar welder in Containment Building One. This employment lasted for 3-4 weeks. Following the completion of his job assignment on Containment Building One in June 1977, petitioner checked with his union hall, but again found no work available. However, petitioner had another friend at Auxiliary Building Two, construction of which had commenced that month, and he started working at that building immediately. Petitioner worked in Auxiliary Building Two as an ironworker and then as a foreman *340 during the remainder of 1977. During 1977, the demand for the ironworkers at the Palo Verde Project was steadily increasing and Bechtel's employment of such workers at the site was approaching its peak of 600. During that same year, however, employment opportunities for ironworkers in the Phoenix metropolitan area were poor. Petitioner was continuously employed by Bechtel at the Palo Verde Project for approximately 26 months from March 14, 1977 until May 17, 1979, when his employment was terminated due to absenteeism. Throughout the time he worked for Bechtel, petitioner maintained a residence in Phoenix, Arizona. During the period March 14, 1977 through December 31, 1977, petitioner traveled by automobile to the jobsite in the morning and returned home each night. The Palo Verde Project site is 72 miles (one-way) from petitioner's residence in Phoenix. On his 1977 Federal income tax return, petitioner claimed an employee business expense deduction of $ 3,973 consisting of roundtrip mileage from his Phoenix, Arizona, residence to the Palo Verde Project site. In the notice of deficiency, respondent disallowed the claimed mileage expense deduction. OPINION We must decide *341 whether petitioner is entitled to deduct his automobile expenses incurred in 1977 for traveling daily between his residence and place of employment. Although it is well settled that the costs of commuting are nondeductible personal expenses, Commissioner v. Flowers, 326 U.S. 465 (1946), respondent has conceded in both his opening statement at trial and on brief that if we determine that petitioner's employment at the Palo Verde Project site was temporary rather than indefinite, then petitioner's commuting expenses are deductible. [2]
This Court has held that employment is temporary if its termination within *342 a short period of time can be foreseen. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Albert v. Commissioner, 13 T.C. 129, 131 (1949). Similarly, we have stated that employment is indefinite if its termination within a fixed or reasonably short period cannot be foreseen. Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971). Employment which is originally temporary may subsequently become indefinite because of changed circumstances or the passage of time. Norwood v. Commissioner, 66 T.C. 467 (1976); Kroll v. Commissioner, 49 T.C. 557, 562 (1968). Moreover, even if it is known that employment will terminate at some future date, such employment is not temporary if it is expected to last for a substantial or indefinite period of time. Jones v. Commissioner, 54 T.C. 734 (1970), affd. 444 F. 2d 508 (5th Cir. 1971); Cockrell v. Commissioner, 38 T.C. 470 (1962), affd. 321 F. 2d 504 (8th Cir. 1963). The burden of proving that his employment was temporary rests on the taxpayer. Welch v. Helvering, 290 U.S. 111 (1933); *343 Rule 142(a), Tax Court Rules of Practice and Procedure.
In the instant case, petitioner advances two arguments in support of his claim that employment at the Palo Verde Project was temporary. Petitioner's first argument is that when he was assigned to work at the project on March 14, 1977, he believed, based on past experience in the construction industry, that such employment would only last for a short period of time. At trial, however, petitioner offered no evidence showing either the nature or duration of his previous work experience. Moreover, he admitted on cross-examination that he had never worked at the Palo Verde jobsite prior to 1977. Furthermore, we note that the mere fact that petitioner may have accepted work at other times which was temporary does not prove that this particular employment was temporary. Commissioner v. Peurifoy, 254 F. 2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958); McCallister v. Commissioner, 70 T.C. 505, 510 (1978). Accordingly, on this record, we find petitioner's initial contention unpersuasive. Petitioner's next argument is that a reasonable ironworker beginning work at the Palo *344 Verde Project in March 1977, would have viewed such employment as temporary because of the phased nature of the construction involved. In support of this contention, petitioner maintains that each of the three generating units at the project constitutes a separate phase in the overall construction of the nuclear facility and that each job an ironworker performs on an individual unit involves one phase in the completion of such unti. According to the testimony of petitioner's witnesses, Harry Steele and Gilbert Gutierrez, [3] once an ironworker has finished a particular job in a unit, he would return to the union hall and await referral back to the jobsite when another phase requiring ironwork began. During the interim, other construction trades such as electricians, plumbers, boilermakers, etc., would be called in to work on their respective phases. Under petitioner's argument, since an ironworker may expect his employment to last only as long as the particular unit upon which he is working remains under construction and only until construction on that unit progresses to the stage where another trade craft becomes involved, such employment is inherently temporary. For the reasons *345 set out below, we reject this contention. As respondent correctly points out on brief, petitioner's second argument implicitly assumes that the various phases of construction at the Palo Verde Project are sequential, i.e., one phase of an ironworker's activity at the project is completed before a second phase is begun. However, there is no credible evidence in this record to support such an assumption. Although Mr. Gutierrez testified at length that construction of power plants generally proceed in a segmented or phased manner, he admitted at trial that he had never visited the Palo Verde Project, he was not involved in its construction, and he was not familiar with the specific jobs undertaken by ironworkers at the site. Under these circumstances, we attach little, if any, weight to his testimony. Furthermore, petitioner did not offer any evidence showing that he was hired solely for a particular phase of ironwork *346 such that he could expect his employment at the Palo Verde Project to terminate after completing that work. [4] While it is true that petitioner's first two job assignments were relatively brief in duration, the permanent or temporary nature of employment is generally determined at the time it begins, Commissioner v. Peurifoy, supra; Gardin v. Commissioner, 64 T.C. 1079, 1084 (1975), and there is nothing in this record which convinces us that petitioner's employment was temporary from its inception. Indeed, as petitioner stated at trial, "if you know enough people, you manage to work all year round." Given this testimony and such objective factors as the size of the Palo Verde Project, its projected complete date, petitioner's experience and preferred status with respect to referrals by the union hall, and the lack of employment opportunities for ironworkers in Phoenix, we believe that petitioner must have expected his employment to last for a substantial and indefinite time. *347 Accordingly, we find that petitioner's employment at the Palo Verde Project during 1977 was not temporary and, therefore, petitioner is not entitled to deduct his automobile expenses incurred in traveling to and from the jobsite. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. Since respondent has expressly requested the Court not to apply our holding in Turner v. Commissioner, 56 T.C. 27 (1971), vacated and remanded on respondent's motion in an unpublished order     F. 2d     (2d Cir. Mar. 21, 1972), to the facts herein and has framed the issue before us solely in terms of whether petitioner's employment was temporary or indefinite, we will decide the case on that basis. See McCallister v. Commissioner, 70 T.C. 505 (1978); Norwood v. Commissioner, 66 T.C. 467↩ (1976).
3. Mr. Steele is presently the business manager of Ironworkers Local Union No. 75. During 1977, he was employed as an ironworker at the Palo Verde Project. Mr. Gutierrez is a chemical engineer who was employed in 1977 by the Arizona Public Service Company.↩
4. No evidence was presented by petitioner regarding the terms or conditions under which he accepted employment at the project. Further, the record does not indicate what, if anything, petitioner was told by Bechtel or Local Union No. 75 as to the anticipated duration of that employment.↩