BRONISLAVAS V. SAKALYS AND JURATE A. SAKALYS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sakalys v. Commissioner
Docket No. 24203-92
United States Tax Court
T.C. Memo 1994-400; 1994 Tax Ct. Memo LEXIS 415; 68 T.C.M. (CCH) 438; 94-2 U.S. Tax Cas. (CCH) P47,962; August 18, 1994, Filed *415 Decision will be entered under Rule 155. For petitioners: Richard J. Nolan. For respondent: Michael W. Lloyd. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies in petitioners' 1989 and 1990 Federal income taxes in the amounts of $ 11,316 and $ 14,060, respectively. After concessions, the issues for decision are: (1) Whether petitioners properly deducted "away from home expenses" pursuant to section 162(a)(2)[1] on their 1989 and 1990 income tax returns, and (2) whether petitioners properly deducted "sabbatical expenses" pursuant to section 162(a)(2) on their 1989 income tax return. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein *416 by this reference. Petitioners resided in Aurora, Colorado, when they filed their petition in this case. Petitioners filed joint Federal income tax returns for the years 1989 and 1990. From 1974 until 1987, both petitioners resided in Aurora, Colorado. In August 1987, however, Mr. Sakalys moved to Anaheim, California, to work as an engineering technician/designer for Willdan Associates, a consulting civil engineering firm. Mr. Sakalys remained in California working exclusively for Willdan Associates until March 1991, when his employment was terminated. Following his termination, Mr. Sakalys returned to Colorado, where he has since lived. In each of the years Mr. Sakalys worked in California (1987 through 1991), petitioners deducted expenses they claimed were related to his "temporary out-of-state-employment". These expenses totaled $ 32,000 in 1989 and $ 46,545 in 1990. As part of his duties at Willdan Associates, Mr. Sakalys was required to drive to various job locations in the Los Angeles, California, vicinity. Because Mr. Sakalys used his own automobile to perform these duties, Willdan Associates offered a partial reimbursement system for expenses related to vehicle operation *417 and certain maintenance. Mr. Sakalys was also provided with a fuel credit card. Mr. Sakalys received reimbursement for repair costs under this plan until sometime between the mid and third quarter of 1990. Petitioners claimed $ 5,330 on their 1990 return as unreimbursed business expenses. Of this amount, $ 1,281 related to the repair and maintenance of Mr. Sakalys' automobile. During the period Mr. Sakalys lived in California, Mrs. Sakalys remained in Colorado working as a professor of nursing at the University of Colorado Health Sciences College in Denver. From August 1988 through January 1989, Mrs. Sakalys lived with Mr. Sakalys while on sabbatical leave. During this time, she attended class at the University of California, Irvine, and prepared a paper entitled "Illness Behavior in Patients with Rheumatoid Arthritis". Petitioners deducted $ 3,500 on their 1989 Federal income tax return as sabbatical expenses. The parties have stipulated, however, that the amount of claimed sabbatical expenses in issue is $ 3,634, which comprises: Expense
Amount
Living expenses
$ 1,528
Denver house maintenance
658
Shipping charges
512
Car return to Colorado
628
Mrs. Sakalys to fly on a
308
commercial carrier from
California to Colorado
Total
$ 3,634
*418 Respondent disallowed the amounts claimed as "temporary out-of-state-employment" expenses for 1989 and 1990 on the grounds that (1) Mr. Sakalys' employment with Willdan Associates was for an indefinite, rather than temporary, period of time, and (2) the substantiation requirements of section 274 had not been met. As for the 1989 sabbatical expenses of $ 3,634, respondent concedes all but $ 1,528 for living expenses and $ 658 of expenses relating to maintenance of petitioners' house in Aurora. OPINION At the conclusion of trial, we directed the parties to file simultaneous posttrial briefs by June 6, 1994. As of the date of this opinion, however, petitioners have failed to comply. This could be considered to be sufficient grounds for finding that petitioners have abandoned all issues before us. See, e.g., Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986). Nevertheless, we will address the issues presented herein. Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).
*419 1. Away From Home Expenses
Section 162(a)(2), allows a deduction for "traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business". To qualify for this deduction, three conditions must be met: (1) The expenses must be ordinary and necessary; (2) the expenses must be incurred while the taxpayer is away from home; and (3) the expenses must be incurred in pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946); United States v. Woodall, 255 F.2d 370, 372 (10th Cir. 1958). This Court has held that as a general rule "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). An exception to this rule exists when a taxpayer with a well-established tax home accepts temporary employment, as *420 opposed to indefinite employment, elsewhere. Peurifoy v. Commissioner, 358 U.S. 59 (1958); Horton v. Commissioner, 86 T.C. 589, 593 (1986). If the employment is temporary, the tax home is considered to be the place of the taxpayer's residence; whereas, if employment is indefinite, the tax home is the location of the employment. Kroll v. Commissioner, supra.Employment is temporary if it is expected to last only for a short period of time. Mitchell v. Commissioner, supra at 581; Tucker v. Commissioner, 55 T.C. 783 (1971). This expectation is measured by what was contemplated at the time employment was accepted. McCallister v. Commissioner, 70 T.C. 505, 509 (1978). Where the taxpayer cannot anticipate the termination date, employment is considered indefinite. Griffiths v. Commissioner, T.C. Memo. 1991-55. The duration of employment is a factual issue, and no single element is determinative. Norwood v. Commissioner, 66 T.C. 467, 470 (1976). *421 Respondent contends that Mr. Sakalys' employment with Willdan Associates was indefinite in duration. We agree. On his application for employment, Mr. Sakalys sought permanent, full-time employment. Nothing in the record indicates that Mr. Sakalys expressed any intention to limit the duration of his employment. Paul S. Carver, the division manager of Willdan Associates who was present during Mr. Sakalys' interview, testified that the job offer was made for a full-time position. Mr. Carver stated that at no time was Mr. Sakalys told that the job was temporary in nature. Mr. Sakalys contends that at the time he accepted employment with Willdan Associates, he believed it would be temporary in duration. In support of this, Mr. Sakalys claims that he was hired to work solely on what was referred to as the "EMWD" project. It was his belief that only 6 to 8 months of work would be required to complete this task. Mr. Carver, however, stated that Mr. Sakalys was advised of several projects that Willdan Associates was working on and was at no time told that his job would be limited to work on any one project. Moreover, Mr. Sakalys' own testimony demonstrates that he could not have *422 reasonably foreseen the duration of his employment at the time he was hired. Mr. Sakalys testified that he has 25 years of experience in engineering projects, and that the EMWD project was equal to or larger in scope than any he had worked on previously. He also testified that in his experience, it is not unusual for delays in construction projects to occur and that with large projects, events are hard to plan and can only be dealt with as the work is done. Finally, he acknowledged that on unique projects such as EMWD, delays could be anywhere from 1 month to 1-1/2 years. The very uncertainties Mr. Sakalys described indicate that his employment was for an indefinite period. It is illustrative to note that work on the EMWD project did not begin until sometime in 1989 -- at least 1-1/2 years after Mr. Sakalys was hired by Willdan Associates. Mr. Sakalys worked in California for Willdan Associates for 3 years and 8 months. We agree with respondent that Mr. Sakalys' employment in California was for an indefinite period. Based on the foregoing, we sustain respondent's determination on this issue. In their pretrial memorandum, petitioners argue that even if Mr. Sakalys' claimed *423 expenses for temporary out-of-state employment were not incurred while "away from home", a portion may still be deducted as unreimbursed employee expenses. Petitioners did not, however, prove which expenses would qualify for such treatment. Accordingly, we find that no portion of the amounts claimed by petitioners may be characterized as unreimbursed employee expenses. 2. Sabbatical Expenses
Respondent argues that portions of the sabbatical expenses claimed on behalf of Mrs. Sakalys for 1989 are nondeductible personal expenditures. Expenditures made by a taxpayer in furthering her education are not deductible unless they qualify under section 162 and section 1.162-5, Income Tax Regs.Section 1.162-5, Income Tax Regs., sets forth objective criteria for distinguishing between business and personal expenses. Pursuant to this regulation, expenditures are deductible as sabbatical expenses so long as they maintain or improve skills required in the taxpayer's employment. Petitioners must show a direct and proximate relation between the skills required and the sabbatical expenses incurred. Kornhauser v. United States, 276 U.S. 145, 153 (1928); *424 Schwartz v. Commissioner, 69 T.C. 877, 889 (1978). In addition, petitioners must prove that such expenses were ordinary and necessary within the meaning of section 162 and section 1.162-5, Income Tax Regs.Boser v. Commissioner, 77 T.C. 1124, 1132 (1981), revised 79 T.C. II (1982), affd. per order (9th Cir., Dec. 22, 1983); Ford v. Commissioner, 56 T.C. 1300, 1305-1307 (1971), affd. 487 F.2d 1025 (9th Cir. 1973); sec. 1.262-1(b)(9), Income Tax Regs.
Petitioners deducted an amount of $ 1,528 on their 1989 return, which purportedly represented living expenses incurred while Mrs. Sakalys was on sabbatical. This consisted of $ 500 for half the cost of a bed; $ 155 for half the cost of a refrigerator; and $ 873 for half the cost of a couch set. By making these purchases, petitioners acquired personal assets for use in the California apartment. The usefulness of these assets extended far beyond the short period of the sabbatical. Petitioners also deducted as sabbatical expenses $ 658, which related to maintenance of petitioners' house in Aurora, Colorado. Of this *425 amount, $ 378 represented mortgage costs and the remainder consisted of: $ 8.92 AT&T telephone service; $ 126.55 gas and power utility services; $ 31.14 for U.S. West telephone services; $ 13.43 for City of Aurora water; and $ 100 caretaker services. Petitioners have failed to demonstrate how any of these deductions bear a "direct and proximate relationship" to Mrs. Sakalys' sabbatical. We find that these expenses are purely personal in nature and are not ordinary or necessary within the meaning of section 162(a). Respondent's determination as to the nondeductibility of these items is therefore sustained. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩