T.C. Summary Opinion 2006-74

UNITED STATES TAX COURT

CHARLES M. RIDEAUX, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4082-05S.                    Filed May 3, 2006.

Charles M. Rideaux, pro se.

Monica D. Gingras, for respondent.


    DEAN, Special Trial Judge:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Unless otherwise
indicated, subsequent section references are to the Internal
Revenue Code as in effect for the year at issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.
The decision to be entered is not reviewable by any other court,
and this opinion should not be cited as authority.

Respondent determined a deficiency in petitioner's Federal income tax of $6,025.70 for 2003. The issue for decision is whether a qualified retirement plan distribution was attributable to petitioner's being "disabled" within the meaning of section 72(m)(7), thereby excepting him from liability for the section 72(t) 10-percent additional tax.

## Background

The stipulated facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Anaheim, California.

Petitioner was employed by Southern California Edison Co. (Southern Cal) as a boiler mechanic for 20 years. He worked for Southern Cal until his retirement in March of 2003.

As a boiler mechanic, petitioner's job was to maintain power generating stations, which required him to engage in "heavy work". When working on a boiler, petitioner was required to lift large pieces of metal with his coworkers that weighed between 250-300 pounds. Petitioner's responsibilities included, among other things, replacing valves, doing boiler overhauls, welding on a steel platform on his knees, and constructing parts for maintenance of the power plant.

Petitioner's Medical History

Petitioner has a history of physical injuries sustained while working for Southern Cal. In 1987, petitioner had surgery for his back. In 1989, petitioner started to notice pain in his left shoulder while performing his regular job duties. The physician diagnosed him with bursitis (shoulder tendonitis) which was likely a result of repetitive use of his left upper extremity, required while lifting, pushing, and pulling heavy materials, including pumps, valves, flat plates, and other parts of the boilers. Since that time, petitioner has been self-treating with medications as well as applications of heat and ice. In 2003, petitioner received an injection of steroids for his left shoulder to ease the pain.

In February of 2001, petitioner sustained a work-related injury to his left knee. Petitioner had knee surgery, took a leave of absence, and has not worked since his knee injury in 2001. Although petitioner has a full range of motion for his left knee, he suffers pain to his knee with movement and weight bearing.

As a result of his knee injury in 2001, petitioner started having complications with his back, and he received a series of epidural steroid injections to ease the pain to his lumbar spine.

In 2003, petitioner was diagnosed with arthritis in the left knee, lumbar radiculopathy (pain in the lower extremities), epidural fibrosis of the lumbar spine (scar tissue near the nerve

spot), obesity, and a left shoulder rotator cuff tear.  Some of these physical ailments stemmed from or are related to injuries that petitioner sustained in earlier years.

Due to his knee injury, petitioner gained 40 pounds from inactivity.  His weight exacerbated his knee and back pain, which hampered his recovery.  Petitioner's physicians recommended that he participate in a weight loss program as part of his treatment. During 2003, petitioner went to physical therapy three times a week and was required to engage in a home exercise program. Petitioner was asked to limit his weight bearing, lifting, and bending activities.  In addition, petitioner went for an orthopedic reevaluation approximately every 6 weeks to track the progress of his recovery.

By letter dated January 20, 2006, petitioner's primary treating physician, Dr. Steven Nagelberg, advised that he had been treating petitioner for work-related injuries from March 14, 2002, to December 10, 2005, for a left rotator cuff tear, left knee arthritis, and lumbar radiculopathy.  Dr. Nagelberg further advised that petitioner was considered "temporarily totally disabled" from March 14, 2002, to December 10, 2005.

Petitioner's Distribution

In March of 2003, while petitioner was still on leave, Southern Cal offered, and petitioner accepted, an early retirement package.  Petitioner received a lump-sum distribution of $60,257.49 from the Southern California Edison Co. Benefits

Administration (distribution) in 2003.  At the time, petitioner was 50 years old.

Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for 2003, on which he included the distribution as income.  Petitioner claimed on line 2 of Form 5329, Additional Taxes on Qualified Plans (including IRAs) and Other Tax-Favored Accounts, that he was excepted from the additional tax on early distributions, because the distribution was due to total and permanent disability.

On December 13, 2004, respondent issued to petitioner a statutory notice of deficiency for 2003.  Respondent determined that petitioner is liable for an additional tax on the distribution under section 72(t), because his premature distribution did not meet any of the exceptions enumerated under section 72(t)(2).

## Discussion

Section 72(t)(1) generally imposes a 10-percent additional tax on premature distributions from "a qualified retirement plan (as defined in section 4974(c))", unless the distributions come within one of the statutory exceptions under section 72(t)(2). One of the exceptions listed is a distribution attributable to the employee's being disabled within the meaning of section 72(m)(7).  Sec. 72(t)(2)(A)(iii).

The legislative purpose underlying the section 72(t) tax is that "'premature distributions from IRAs frustrate the intention of saving for retirement, and section 72(t) discourages this from happening'". Arnold v. Commissioner, 111 T.C. 250, 255 (1998) (quoting Dwyer v. Commissioner, 106 T.C. 337, 340 (1996)); S. Rept. 93-383, at 134 (1974), 1974-3 C.B. (Supp.) 80, 213.

Respondent argues that petitioner's periodic professional consultations with physicians for lower back pain and arthritis in the left knee do not constitute "disabled" within the meaning of section 72(m)(7).[1]

Section 72(m)(7) provides:

> (7) Meaning of disabled.-- For purposes of this section, an individual shall be considered to be disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be disabled unless he furnishes proof of the existence thereof in such form and manner as the Secretary may require.

---

[1] The Commissioner's determinations are presumed correct, and generally taxpayers bear the burden of proving otherwise. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491, the burden of proof shifts from the taxpayer to the Commissioner if the taxpayer produces credible evidence with respect to any factual issue relevant to ascertaining the taxpayer's tax liability. Sec. 7491(a)(1). Petitioner does not argue that the burden of proof should be shifted to respondent under section 7491. Regardless of whether the sec. 72(t) additional tax is an "additional amount" to which sec. 7491(c) would apply, petitioner has met his burden of showing that he was disabled at the time of the distribution.

The determination of whether a taxpayer is disabled is made with reference to all the facts of the case. See sec. 1.72-17A(f)(2), Income Tax Regs. The regulations also set forth general considerations upon which a determination of disability is to be made, such as the nature and severity of the impairment. See sec. 1.72-17A(f)(1), Income Tax Regs.

The regulations emphasize that the "substantial gainful activity" to which section 72(m)(7) refers is the activity, or a comparable activity, in which the individual customarily engaged prior to the arising of the disability. See Dwyer v. Commissioner, supra at 341; sec. 1.72-17A(f)(1), Income Tax Regs. Therefore, the impairment must be evaluated in terms of whether it does, in fact, prevent the individual from engaging in his customary, or any comparable, substantial gainful activity considering the individual's education, training, and work experience. Sec. 1.72-17A(f)(1), Income Tax Regs.

Respondent argues that on box 7 of Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., issued by Southern Cal, the distribution was classified as an "early distribution, no known exception". Petitioner affirmatively claimed on line 2 of Form 5329, Additional Taxes on Qualified Plans (including IRAs) and Other Tax-Favored Accounts, that he was excepted from the additional tax, because the distribution

was due to total and permanent disability.  The Court finds that, despite the distribution classification on the Form 1099-R, petitioner has provided sufficient evidence to show that he was disabled at the time of the distribution.

Prior to petitioner's knee injury, his position as a boiler mechanic at the power plant required him, with assistance from his coworkers, to repeatedly lift heavy objects and to be on his knees for certain tasks, such as welding on a platform. According to the medical evaluations from petitioner's physicians during 2003, petitioner experienced pain whenever he moved or shifted weight onto his left knee.  As a result, petitioner was unable to return to work, because he could not lift heavy objects.  Even had petitioner not retired, the evidence shows that petitioner's injuries were such that he could no longer perform his job.  See Brown v. Commissioner, T.C. Memo. 1996-421 (finding that petitioner was "disabled" since he could not climb ladders, or otherwise lift heavy objects, or "walk beams", because his position as a project engineer required him to be substantially mobile and physically fit).

The term "indefinite" under section 72(m)(7) means that it cannot reasonably be anticipated that the impairment will, in the foreseeable future, be so diminished as no longer to prevent substantial gainful activity.  Sec. 1.72-17A(f)(3), Income Tax Regs.  For example, an individual who suffers a bone fracture

which prevents him from working for an extended period of time will not be considered disabled if his recovery can be expected in the foreseeable future; if the fracture persistently fails to knit, the individual would ordinarily be considered disabled. Id.

An impairment which is remediable does not constitute a disability. Sec. 1.72-17A(f)(4), Income Tax Regs. An individual will not be deemed disabled if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in his customary or any comparable substantial gainful activity. Id.

Although petitioner went to physical therapy sessions and received steroid shots for his pain, petitioner remained on leave and was unable to work. Petitioner received treatments to his knee for at least 4 years after his injury in 2001. Moreover, petitioner's lower back pain, in part triggered by his knee injury, stemmed from injuries sustained earlier in his career as a boiler mechanic. These longstanding injuries are comparable to a bone fracture that persistently fails to knit as set forth by the example in the income tax regulations.

According to a letter from petitioner's primary treating physician, petitioner was considered "temporarily totally disabled" for the entire period under his care, from March 14,

2002, to December 10, 2005.  The resolution of whether petitioner was "disabled" within the meaning of section 72(m)(7) now turns upon a narrow question of fact--whether petitioner's injuries were temporary or indefinite?

There is a dearth of cases interpreting and analyzing the term "indefinite" under section 72(m)(7) and section 1.72-17A(f)(3), Income Tax Regs.  There is, however, in the context of a taxpayer who seeks deductions for certain expenses incurred while away from home under section 162(a)(2), a well-established body of caselaw that has analyzed and contrasted the concepts of "temporary" and "indefinite".  See Peurifoy v. Commissioner, 358 U.S. 59, 60-61 (1958); Neal v. Commissioner, 681 F.2d 1157, 1159 (9th Cir. 1982) (following Kasun v. United States, 671 F.2d 1059 (7th Cir. 1982)), affg. T.C. Memo. 1981-407; Stricker v. Commissioner, 54 T.C. 355, 361-362 (1970), affd. 438 F.2d 1216 (6th Cir. 1971).  They lend guidance to the interpretation of "indefinite" in this case.

An employment is for an indefinite duration if its termination is not foreseeable or is not reasonably expected to be foreseen within a fixed or reasonably short period of time. Mitchell v. Commissioner, 74 T.C. 578, 581-582 (1980); Stricker v. Commissioner, supra at 361; White v. Commissioner, T.C. Memo. 1984-128; Duley v. Commissioner, T.C. Memo. 1979-262.

The mere labeling or designation of a job as "temporary" is not determinative; the duration of a job is indefinite if termination is not foreseeable within a short period of time. Garlock v. Commissioner, 34 T.C. 611 (1960); Allison v. Commissioner, T.C. Memo. 1986-346. Moreover, employment that was temporary in its inception may become indefinite due to change in circumstances, or simply by the passage of time. See Mitchell v. Commissioner, supra at 581; Norwood v. Commissioner, 66 T.C. 467, 469-470 (1976); Kroll v. Commissioner, 49 T.C. 557, 562 (1968); Moxey v. Commissioner, T.C. Memo. 1988-156.

Similarly, although petitioner's injuries were labeled as "temporary", there was no reasonable indication, nor could it be reasonably anticipated or be foreseen at the time of the distribution in 2003, when or if petitioner would be able to return to work. Even if petitioner's injuries were "temporary" initially, over time, they became indefinite. The inability to predict when petitioner would be able to return to work, if ever, caused the disability to be indefinite within the meaning of section 72(m)(7) and section 1.72-17A(f)(3), Income Tax Regs. See Brown v. Commissioner, supra.

The Court finds that petitioner's physical injuries, which were of a long-continued and indefinite duration, prevented him from engaging in his customary or any comparable substantial gainful activity. Accordingly, petitioner was disabled within

the meaning of section 72(m)(7), and the distribution is not subject to the 10-percent additional tax under section 72(t).

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered for petitioner</u>.