T.C. Summary Opinion 2008-78

UNITED STATES TAX COURT

PAUL L. TUCKER, JR., AND ANITA H. TUCKER, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5854-06S.                    Filed July 2, 2008.

Paul L. Tucker, Jr., and Anita H. Tucker, pro sese.

Marshall R. Jones, for respondent.

CARLUZZO, Special Trial Judge:  This case was heard
pursuant to the provisions of section 7463.[1]  Pursuant to section
7463(b), the decision to be entered is not reviewable by any

_____

     [1] Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.  Rule references are to the Tax Court Rules of
Practice and Procedure.

other court, and this opinion shall not be cited as precedent for any other case.

In a notice of deficiency dated December 20, 2005, respondent determined a $7,276 deficiency in and imposed a $1,455 section 6662(a) accuracy-related penalty with respect to petitioners' 2002 Federal income tax. The issues for decision are: (1) Whether petitioners are entitled to an employee business expense deduction in excess of the amount allowed by respondent; (2) whether petitioners are entitled to a charitable contribution deduction in excess of the amount allowed by respondent; and (3) whether petitioners are liable for an accuracy-related penalty.

                          Background

Some of the facts have been stipulated and are so found. Petitioners are, and were at all times relevant, married to each other. At the time the petition was filed, they resided in Birmingham, Alabama. References to petitioner are to Paul L. Tucker, Jr.

During 2002 petitioner was employed as a pilot for Southwest Airlines (Southwest). As a Southwest pilot, he functioned in two capacities--as a line captain and as a check airman. For purposes of this case, his duties in each capacity can be briefly summarized. As a line captain, petitioner was responsible: (1) For piloting an aircraft between departure and arrival on any

given flight assignment; and (2) for the safe transportation of passengers, crew, and cargo. As a check airman, petitioner, in accordance with Federal Aviation Administration requirements and as supervised from Dallas, Texas, was responsible to train or to review the performance of other Southwest employees. Petitioner's rate of compensation was the same regardless of the function he performed on any flight assignment. During 2002 petitioner estimates that more of his earnings from Southwest were attributable to flights during which he functioned as a check airman than to those during which he functioned as a line captain.

Petitioners resided in Birmingham, Alabama, during 2002, but most of petitioner's flight assignments (as a line captain, check airman, or both) during that year originated and concluded at Midway Airport in Chicago, Illinois (Midway). In connection with his flight assignments, petitioner routinely drove from his residence in Birmingham to a nearby airport and then flew to Midway so as to arrive in sufficient time for his flight assignment. Sometimes that required him to leave Birmingham the night before his flight assignment and spend the night in Chicago. Typically, at the conclusion of a flight assignment he flew from Midway back to Birmingham and returned to his residence. Again, depending upon the timing of the flights, petitioner might spend the night in Chicago and return to

Birmingham the next morning.  Pursuant to Southwest's travel reimbursement policy, petitioner was reimbursed for travel expenses on an hourly basis for a period that began 1 hour before the scheduled departure time of any given flight assignment and ended one-half hour after the flight assignment terminated.  On those occasions when petitioner spent the night in Chicago, he did so in an apartment that he rented there.

During 2002 petitioners were members of the Dawson Memorial Baptist Church in Birmingham (Church).  Forty checks totaling $6,410 show donations in that amount to Church during 2002.

Petitioners' joint 2002 Federal income tax return, which was prepared by a paid income tax return preparer, was timely filed. As relevant here, petitioners claimed a $28,536 employee business expense deduction and a $19,979 charitable contribution deduction on a Schedule A, Itemized Deductions, included with that return.[2]

In the notice of deficiency respondent:  (1) Disallowed all but $10,810 of the employee business expense deduction; (2) disallowed all but $2,196 of the charitable contribution deduction; and (3) imposed a section 6662(a) accuracy-related penalty upon the ground that the underpayment of tax required to be shown on petitioners' 2002 return is due to negligence or

_____

[2] To some extent, the details of the employee business expense deduction are shown on a Form 2106, Employee Business Expenses, also included with petitioners' 2002 return.  The amount shown above for that deduction does not take into account sec. 67(a).

intentional disregard of rules or regulations. The disallowed portion of the employee business expense deduction relates almost entirely to: (1) Expenses petitioner incurred traveling between Birmingham and Chicago; (2) the cost of renting and maintaining an apartment in Chicago; and (3) a claim for meals expenses on those occasions when petitioner was required to remain in Chicago because of the timing of his Midway flight assignments and available flights from and to Birmingham.

## Discussion

### 1. Employee Business Expense Deduction

Ordinarily, expenses incurred by an individual for meals and lodging are considered personal, living expenses and may not be deducted. Sec. 262(a). On the other hand, expenses for meals and lodging (other than amounts that are lavish or extravagant under the circumstances) incurred by an employee can qualify as deductible trade or business expenses if the expenses were incurred while the employee was traveling away from home in connection with the employee's employment. Sec. 162(a)(2); Primuth v. Commissioner, 54 T.C. 374, 377 (1970). To qualify for deduction under section 162(a)(2), among other things, the expenses for meals and/or lodging must be incurred while the taxpayer is away from home, and the expenses must be directly connected with carrying on the taxpayer's business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946).

The reference to "home" in section 162(a)(2) means the taxpayer's tax home. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Foote v. Commissioner, 67 T.C. 1, 4 (1976); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968).

The disallowed portion of the employee business expense deduction consists of expenses petitioner incurred to travel between his residence and Midway, as well as expenses for meals and lodging while petitioner remained in Chicago. According to petitioners, those expenses are properly deductible as travel expenses petitioner incurred while traveling away from home as an employee of Southwest. According to respondent, those expenses represent nondeductible personal, living, or family expenses.

The dispute between the parties reduces to their disagreement regarding the location of petitioner's "tax home" during the year in issue. According to petitioners, petitioner's tax home was Dallas, and "traveling expenses" incurred in connection with traveling to or remaining in Chicago are deductible under section 162(a)(2). According to respondent, petitioner's tax home was Chicago during 2002, and the expenses incurred to travel there or for meals and lodging while present in Chicago are not deductible because the expenses are personal in nature. For the following reasons, we agree with respondent.

Generally, a taxpayer's tax home is determined by the location of the taxpayer's regular or principal (if more than one regular) place of business. Mitchell v. Commissioner, supra; Kroll v. Commissioner, supra; cf. sec. 1.911-2(b), Income Tax Regs.

Petitioners point out that much of petitioner's income from Southwest during 2002 was generated from flights on which he functioned as a check airman. They further note that he was supervised from Dallas on those flights. Upon the basis of those facts, they argue that Dallas should be considered his tax home. We have difficulty following their reasoning on the point, and they have offered no support or authority for such a proposition. We can envision many scenarios where an employee regularly works in one location but is supervised from a distant one. As previously noted and well established, it is the taxpayer's regular place of business that determines the taxpayer's tax home for purposes of section 162(a)(2). The location of the employee's supervision or supervisor might be instructive, but it is hardly determinative.

During 2002 most of petitioner's flight assignments originated and terminated at Midway. As best can be determined from Southwest's records, he was physically present in Dallas on relatively few occasions for business purposes during that year. It follows that Midway was petitioner's regular (or at least

principal) place of business during 2002 and Chicago is petitioner's tax home during that year. Respondent's adjustments that reflect those findings are sustained. Petitioners are not entitled to an employee business expense deduction in excess of the amount allowed by respondent.

2. <u>Charitable Contribution Deduction</u>

Petitioners claimed a $19,979 charitable contribution deduction on their 2002 return. In general, a taxpayer is allowed to deduct any donations, contributions, or gifts made to a qualifying organization. See sec. 170(a), (c). The only donee specifically identified in the record is Church, and nothing in the record suggests that Church was not a qualifying organization described in section 170.

Checks made to Church show that petitioners contributed $6,410 to that organization during 2002. According to petitioner, his religious principles constrained him to make cash donations to Church anonymously. According to petitioner, those cash donations totaled almost $14,000.

We appreciate petitioner's religious beliefs and practices, but a deduction for a charitable contribution, whether made in cash or otherwise, must be substantiated by at least one of the following: (1) A canceled check; (2) a receipt from the donee charitable organization showing the name of the donee, the date of the contribution, and the amount of the contribution; or (3)

in the absence of a canceled check or receipt from the donee charitable organization, other reliable written records showing the name of the donee, the date of the contribution, and the amount of the contribution.  Sec. 1.170A-13(a)(1), Income Tax Regs.  The reliability of the records is determined on the basis of all of the relevant facts and circumstances.  See sec. 1.170A-13(a)(2), Income Tax Regs.

Other than his testimony regarding his religious beliefs and donation practices, the only evidence in the record relating to the amount of cash contributions made to Church during 2002 is a handwritten log prepared by petitioner.  The entries made in the log were copied from notations made in another "ledger" also maintained by petitioner but not produced at trial.  Set against petitioners' practice of making substantial donations to Church by check, we do not find petitioner's handwritten log to be persuasive or otherwise to satisfy the provisions of the regulation cited above.  Petitioners are entitled to a charitable contribution deduction in excess of the amount allowed by respondent in the notice of deficiency, but only to the extent that the contributions are evidenced by canceled checks to Church.[3]

---

[3] That amount exceeds the amount allowed in the notice of deficiency by $3,214.

3. <u>Section 6662(a) Accuracy-Related Penalty</u>

According to respondent, the underpayment of tax required to be shown on petitioners' 2002 return is due to negligence or intentional disregard of rules or regulations. See sec. 6662(a), (b)(1), (c).

According to respondent, the imposition of the section 6662(a) accuracy-related penalty upon the ground of negligence is appropriate because: (1) Petitioners improperly failed to treat Chicago as petitioner's tax home during 2002; and (2) they claimed a charitable contribution deduction without having maintained sufficient records to support that deduction.

The burden of production rests with respondent to come forward with sufficient evidence to show that petitioners are liable for the penalty here in dispute. See sec. 7491(c). After carefully considering the evidence in this case, we find that respondent's burden has not been met. Petitioners are not liable for a section 6662(a) accuracy-related penalty for 2002.

To reflect the foregoing and to take into account payments made after the notice of deficiency was issued,

<u>Decision will be entered</u>

<u>under Rule 155</u>.