T.C. Memo. 1999-17


UNITED STATES TAX COURT


ABRAHAM AND DINA WEISS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23567-95.                    Filed January 28, 1999.


Abraham and Dina Weiss, pro sese.

<u>Rosemary D. Camacho</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GALE, <u>Judge</u>:  Respondent determined deficiencies and an

addition to tax with respect to petitioners' Federal income taxes

as follows:

|  |  | Addition to Tax |
| Year | Deficiency | Sec. 6653(a) |
| 1976 | $5,635 | --- |
| 1977 | 8,100 | --- |
| 1978 | 7,258 | $363 |

Respondent has also determined that petitioners are liable for increased interest on underpayments attributable to a tax-motivated transaction as defined in section 6621(c).[1]

After concessions, the issues for decision are: (1) Whether the Oshtemo-Kalamazoo Associates partnership (Oshtemo-Kalamazoo), in which petitioner Abraham Weiss was a general partner, engaged in a cable television activity for profit, with the result that petitioners should be allowed to claim their proportionate share of the losses and investment tax credits generated by that activity for the years in issue; (2) whether petitioners failed to establish their ownership interests in the partnership, so as to be entitled to the deductions or credits in question, or whether the transactions were instead shams, devoid of substance; (3) whether respondent may disallow the losses from Oshtemo-Kalamazoo claimed as deductions on petitioners' tax returns for the taxable years 1976, 1977, and 1978 without proof that adjustments were made to the partnership returns of Oshtemo-Kalamazoo; (4) whether petitioners are liable for the negligence addition to tax pursuant to section 6653(a) for the taxable year

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1978; and (5) whether petitioners are liable for increased interest on the deficiencies, if any, pursuant to section 6621(c).

## FINDINGS OF FACT[2]

At the time petitioners filed their petition herein, they were residents of Brooklyn, New York. During the taxable years 1976, 1977, and 1978, petitioner Abraham Weiss was employed as a certified public accountant. He has substantial experience in preparing tax returns. During the same years, he was also a general partner in Oshtemo-Kalamazoo, a partnership involved in a cable television activity. Before he became a general partner in Oshtemo-Kalamazoo, petitioner Abraham Weiss' only experience in the cable television industry arose from providing accounting services for clients in that industry. He prepared the tax returns for Oshtemo-Kalamazoo for the years in issue. At the time of trial, petitioners had no documents, such as bank records or other business records, relating to Oshtemo-Kalamazoo, nor were they able to locate witnesses other than Mr. Weiss himself who could testify regarding their investment in Oshtemo-Kalamazoo and his becoming a general partner therein.

Oshtemo-Kalamazoo issued a note to acquire a cable television system in 1976. The note was nonrecourse, and petitioners did not have personal liability on the note.

---

[2] Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Oshtemo-Kalamazoo did not ask the limited partners to make any cash investments during the years in issue.

Petitioners filed joint Federal income tax returns for their taxable years 1976, 1977, and 1978 on which they claimed losses from Oshtemo-Kalamazoo in the amounts of $12,234, $10,462, and $8,012, respectively. They also claimed a share, in the amount of $1,950, of an investment tax credit relating to Oshtemo-Kalamazoo for the taxable year 1976.

In 1985, Acton CATV, Inc. (Acton CATV), as part of a joint venture agreement, assumed all partnership obligations of Oshtemo-Kalamazoo. Acton CATV agreed to indemnify petitioner Abraham Weiss for any partnership obligations incurred by Oshtemo-Kalamazoo.

During respondent's audit of the partnership returns, petitioners agreed to extensions of the period of limitations. In the notice of deficiency, issued August 18, 1995, respondent disallowed the losses claimed by petitioners on their tax returns for the taxable years 1976, 1977, and 1978 relating to Oshtemo-Kalamazoo. Respondent also determined that petitioners' claim to the $1,950 share of an investment tax credit relating to Oshtemo-Kalamazoo for the taxable year 1976 should be disallowed.

The petition in this case was filed on November 13, 1995. Respondent filed a request for admissions, with service upon petitioners, on December 20, 1996. Petitioners filed no response, and the matters in respondent's request were deemed admitted, pursuant to Rule 90(c). On February 4, 1997, the Court

issued an order in response to respondent's earlier filed motions, requiring petitioners, by February 18, 1997, to produce requested documents and to respond to respondent's interrogatories. The Court held in abeyance respondent's motion for sanctions regarding petitioners' failure to respond to the discovery requests.

Petitioners, however, filed no response to the request for production of documents. They did not provide answers to interrogatories or respond to the request for admissions until March 12, 1997, 5 days before trial.

When the case was called on March 18, 1997, respondent agreed to the Court's vacating petitioners' deemed admissions, in view of petitioners' submission, albeit tardy, of responses to those requests for admissions. Additionally, based upon petitioners' representations that they had no documents in response to respondent's request for production of documents, respondent agreed to abandon that part of the earlier filed motion that sought sanctions relating to the request for production of documents. Respondent continued to seek sanctions for petitioners' untimely filing of responses to interrogatories. In response to the motion for sanctions, the Court agreed to bar petitioners' testimony covering matters that would have been addressed in timely responses to interrogatories, pursuant to Rule 104(c). Before excluding such testimony, however, the Court required respondent to demonstrate, in each instance, not only that the proffered testimony involved information sought in the

interrogatories, but also that petitioners' failure to produce that information had prejudiced respondent's ability to prepare for trial. At trial the Court sustained respondent's objections to proffered testimony with respect to two interrogatories--one relating to the specific amount of time petitioner Abraham Weiss spent working on Oshtemo-Kalamazoo's business affairs, and the other relating to specific information regarding Acton CATV's entry into the partnership business. The Court overruled another objection relating to Mr. Weiss' testifying about the specific duties he performed for Oshtemo-Kalamazoo during the years in issue. The latter ruling was based upon Mr. Weiss' representation that he had earlier revealed such information to one of respondent's counsel.

The parties filed seriatim briefs. Petitioners' reply brief asserted, for the first time in these proceedings, that respondent had lost their documentary records relating to the matters at issue. Respondent then sought, and was granted, permission to file a supplemental brief addressing the asserted loss of petitioners' records. Following submission of that brief, Mr. Weiss sent to the Court a letter in which he further discussed the issue of respondent's alleged loss of petitioners' records.

## OPINION

Respondent's statutory notice of deficiency disallowed petitioners' claimed distributive share of "all income, losses, deductions and tax credits" from Oshtemo-Kalamazoo. Respondent

grouped the reasons for disallowance into three general categories. The first is petitioners' asserted failure to demonstrate that Oshtemo-Kalamazoo was an activity entered into for profit. Respondent accordingly disallowed the claimed deductions for failure to meet the requirements of sections 162, 212, and 183.

Alternatively, respondent contended that petitioners did not establish the requisite ownership interest in the Oshtemo-Kalamazoo program; instead, respondent determined that the Oshtemo-Kalamazoo transactions were shams or lacked substance. Finally, respondent determined that petitioners had not established the cost or basis of assets amortized by the partnership and that the cost used "was unreasonable and excessive and was not incurred for the stated purpose and that the assets have an indeterminate useful life."

Petitioners bear the burden of proof on all pertinent items. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). All claimed deductions and credits are matters of legislative grace and must have a basis in the statute. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). We are not required to find that petitioner Abraham Weiss' self-serving testimony meets that burden. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Even if respondent does not present contradictory evidence, we may still find, on the basis of the record, that petitioners' evidence falls short of meeting their burden of proof. Fleischer

v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), affg. T.C. Memo. 1967-85.

Profit Objective

Section 162 allows the deduction of ordinary and necessary expenses incurred in carrying on a trade or business. An activity qualifies as a trade or business capable of generating deductions under section 162 only if the taxpayer engaged in the activity with the intention of making a profit. Brook, Inc. v. Commissioner, 799 F.2d 833, 838 (2d Cir. 1986), affg. T.C. Memo. 1985-462. Section 212 allows a deduction for expenses incurred in transactions entered into for profit, although the activities do not amount to a trade or business.

Section 183 allows a deduction for activities not motivated by profit, but it subjects such deductions to a variety of limitations. Section 183(a) first permits deductions of items that, by their terms, are not dependent upon a profit motive, such as certain deductions for interest or taxes. Section 183(b)(1) also allows deductions which would otherwise be permitted only if the activity was engaged in for profit. Section 183(b)(2), however, limits these latter deductions to the amount by which the gross income exceeds the deductions that are not dependent upon a profit motive.

In addition to the deductions disallowed, respondent disallowed a claimed investment tax credit. Section 38 permits a credit against Federal income taxes, allowable as a percentage of an investment in "section 38 property". This is generally

tangible personal property that is subject to the allowance for depreciation. Sec. 48(a)(1). Depreciation is allowable on property subject to wear and tear or obsolescence and used in a trade or business or for the production of income. Sec. 167(a). The credit is limited to a percentage of a taxpayer's "qualified investment" in such property. Qualified investment is a percentage of basis, and basis is generally cost. Secs. 46(c), 1011.

As the foregoing discussion indicates, common to the tax benefits claimed--whether deductions or credits--is the requirement that the activity at issue be a trade or business or a transaction otherwise entered into for profit. If this requirement is not met, section 183 limits deductions to the amount of income from the activity, and no investment tax credits are allowed. Soriano v. Commissioner, 90 T.C. 44, 52-53 (1988).

Section 183(c) defines an activity which is "not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." Deductions under section 162 or 212(1) or (2) require the "actual and honest objective of making a profit." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Profit means economic profit independent of tax savings. Antonides v. Commissioner, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Although the expectation of making a profit need not be reasonable, the facts and circumstances must

indicate that the taxpayer entered into the activity, or continued it, with the actual and honest objective of making a profit.  Id.; Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Whether a taxpayer has an actual and honest profit objective is decided on the basis of all surrounding circumstances. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(b), Income Tax Regs.  In making our determination, we give greater weight to objective factors than to a taxpayer's statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs.

Partnership activities present special considerations in determining whether they are entered into for profit. "Partnerships are mere formal entities.  Obviously, they do not have independent minds of their own."  Fox v. Commissioner, 80 T.C. 972, 1007 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinions sub nom. Hook v. Commissioner, Kratsa v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5-9 (3d Cir. 1984).  In determining partnership intent, we often focus on the actions taken by the general partner. Finoli v. Commissioner, 86 T.C. 697, 722 (1986).

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of objective factors to be considered in deciding whether an activity is engaged in for profit.  Allen v.

Commissioner, 72 T.C. 28, 33-34 (1979).  The factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or the taxpayer's advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.

Petitioners have offered little, if any, evidence regarding most of these factors.  They have not shown that petitioner Abraham Weiss, in his capacity as a general partner, carried on his activities in a businesslike manner.  Nor, despite respondent's repeated requests, have petitioners brought forward any books and records relevant to the activity; nor is there any proof that any such books and records were properly maintained. Notwithstanding Mr. Weiss' role as the general partner of a partnership that owned a cable television operation, he has demonstrated no expertise in the cable television field, other than making vague representations that he provided accounting services to cable television customers.  Nor is there direct evidence that the operation of Oshtemo-Kalamazoo was guided by anyone with demonstrated expertise or knowledge of the cable television industry.

Mr. Weiss has represented that he spent adequate time with the Oshtemo-Kalamazoo undertaking, but we have no basis to accept his representations. When respondent sought information pertaining to this issue pursuant to this Court's discovery rules, Mr. Weiss failed to provide that information, despite this Court's order that he do so, to the prejudice of respondent's preparation of a defense as to this issue. Accordingly, on respondent's motion, we prohibited Mr. Weiss from introducing further evidence as to the time spent in this activity, pursuant to Rule 104(c)(2).

We did permit Mr. Weiss to testify that, as general partner for Oshtemo-Kalamazoo, he was actively involved in negotiations relating to acquisition of equipment, negotiations for the broadcast of programs and related materials, logistics, contacts with the municipality, environmental analysis and studies, and day-to-day administration. He did not, however, "manage" the system. Management was instead handled by a management "team". The degree of Mr. Weiss' involvement is, ultimately, unclear.

Petitioners also failed to provide any specifics as to the nature of the Oshtemo-Kalamazoo assets acquired or their value. They have not provided any basis for concluding that such assets would appreciate in value. Petitioners do, however, assert that Acton CATV's acquisition of the cable television activity in 1985 is an indication that it was a profitable operation. We decline to follow that reasoning. The fact that Acton CATV acquired the

business does not impute a profit motive to its previous owners. See Finoli v. Commissioner, supra at 716-718, 726.

Additionally, other than Mr. Weiss' representation that he provided accounting services for unspecified other cable television clients, there is no basis to assume that petitioners have ever had any particular success in similar or dissimilar activities.

The scant evidence presented indicates that petitioners earned no profits whatsoever from their Oshtemo-Kalamazoo activities; they only incurred losses. Petitioners' tax returns indicate that they used these losses to offset taxable income generated by Mr. Weiss' unrelated activities. Finally, although we doubt that considerations of personal pleasure entered into petitioners' decision to engage in cable television activity, the absence of such considerations does not appreciably aid petitioners' attempt to demonstrate a profit objective in that activity.

Petitioners ultimately have failed to produce evidence showing that the Oshtemo-Kalamazoo activities were entered into with the requisite profit motive. Accordingly, we sustain respondent's determination on this issue.

Economic Substance

Respondent has also disallowed the claimed loss deductions because of petitioners' asserted failure to show the necessary attributes of ownership required to claim the Oshtemo-Kalamazoo assets. Instead, respondent asserts the partnership activities

were a sham and lacked economic substance. A transaction is without its intended effect for Federal income tax purposes if it is devoid of economic substance consonant with its intended tax effects. Frank Lyon Co. v. United States, 435 U.S. 561, 573 (1978); Knetsch v. United States, 364 U.S. 361, 364 (1960). The substance of the transaction, not its form, determines its tax consequences. The transaction must have economic substance which is "compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax-avoidance features that have meaningless labels attached". Frank Lyon Co. v. United States, supra at 583-584; Estate of Thomas v. Commissioner, 84 T.C. 412 (1985); Hilton v. Commissioner, 74 T.C. 305 (1980), affd. per curiam 671 F.2d 316 (9th Cir. 1982).

The test for economic substance is based on objective factors. We take into account whether the taxpayer acquired a bona fide equity interest in the property and whether the taxpayer had a reasonable opportunity for economic success. Levy v. Commissioner, 91 T.C. 838, 856 (1988); Packard v. Commissioner, 85 T.C. 397, 417 (1985). We have found the following factors to be particularly important in determining whether a transaction possesses economic substance: The presence or absence of arm's-length price negotiations, Helba v. Commissioner, 87 T.C. 983, 1005-1007 (1986), affd. without published opinion 860 F.2d 1075 (3d Cir. 1988); the relationship between the sale price and the fair market value, Zirker v.

Commissioner, 87 T.C. 970, 976 (1986); the structure of the financing, Helba v. Commissioner, supra at 1007-1011; whether there was a shifting of the burdens and benefits of ownership, Rose v. Commissioner, 88 T.C. 386, 410 (1987), affd. 868 F.2d 851 (6th Cir. 1989); the degree of adherence to contractual terms, Helba v. Commissioner, supra at 1007-1011; and the reasonableness of the income projections, Rice's Toyota World, Inc. v. Commissioner, 81 T.C. 184, 204-207 (1983), affd. in part, revd. in part and remanded 752 F.2d 89 (4th Cir. 1985).

Petitioners presented no pertinent evidence regarding their equity in Oshtemo-Kalamazoo or the prospect of economic success beyond very conclusory assertions that Mr. Weiss thought that investing in a cable television system would be profitable. They gave no hint as to the content or nature of any negotiations employed in acquiring the property, nor did they establish the sale price or the actual value of the assets at issue. As to the structure of the financing, we are told only that Oshtemo-Kalamazoo issued a note to acquire a cable television system in 1976. The note was nonrecourse, and petitioner Abraham Weiss did not have personal liability on the note. This information is not particularly instructive as to the issue of profit objective.

Petitioners have given us no specifics as to any shifting of the burdens and benefits of ownership, except for our being told that an entity named Acton CATV acquired the assets some years after those in issue. Nor have they provided information regarding the degree of adherence to contractual terms or the

reasonableness of the income projections, if any--other than Mr. Weiss' assurances to us that he thought that Oshtemo-Kalamazoo had a tremendous "upside" potential.  In sum, petitioners' evidence falls far short of demonstrating that the Oshtemo-Kalamazoo program possessed the economic substance needed to support the tax deductions and credits at issue.  We sustain respondent's determination as to this issue.

Bases of Amortizable Assets

The Internal Revenue Code permits taxpayers to claim deductions for amortization in specific situations, for example, the amortization of the cost of acquiring a lease under section 178.  Section 1016 requires adjustments to basis with respect to amounts deducted as amortization expenses.  Petitioners have provided no evidence with respect to the bases or costs of assets amortized by Oshtemo-Kalamazoo.  We therefore have no cause to question respondent's disallowance of amortization deductions.

Examination of Partnership Return

On brief, petitioners attack respondent's disallowance by insisting that respondent disallowed the losses and credits claimed on their returns without initially making adjustments to the partnership Federal income tax returns.  Even if true, petitioners' assertion does not avail them here.  A trial before this Court is a proceeding de novo, and our determination as to petitioners' tax liability must be based on the merits of the case and not on any record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 328

(1974).  The question whether respondent made adjustments to the partnership Federal income tax returns before issuing the notice of deficiency to petitioners is thus irrelevant here.  As noted above, petitioners have the burden of proving to this Court that they are not liable for the determined deficiencies.  When they fail to meet this burden, as they have done here, we will sustain a deficiency notice disallowing a partnership loss even though the audit of the partnership was not yet final.  Chaum v. Commissioner, 69 T.C. 156, 163-164 (1977).[3]

Petitioners also argue that there is a presumption that business deals take place at arm's length.  They conclude that, because respondent has not disproved their claims that the Oshtemo-Kalamazoo transactions were conducted at arm's length, their Oshtemo-Kalamazoo transactions are presumptively valid and must be accepted for purposes of Federal income taxation.  Petitioners again fail to recognize that it is their burden, and not respondent's, to prove each fact needed to substantiate the

---

[3] For taxable years beginning after Sept. 3, 1982, the Internal Revenue Code provides for determining the tax treatment of items of partnership income, loss, deductions, and credits at the partnership level in a unified partnership proceeding rather than in separate proceedings with the partners, pursuant to the audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648.  Partnership items include each partner's proportionate share of the partnership's aggregate items of income, gain, loss, deduction, or credit.  Sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs.  These provisions, however, are effective only for partnership taxable years beginning after Sept. 3, 1982.  See TEFRA sec. 407(a)(1), 96 Stat. 670.  Accordingly, they are not in effect for the years here at issue.

deductions and credits at issue and their right to claim them. See Rule 142(a).[4]  They have not done so here.

Asserted Loss of Records

In their reply brief, petitioners assert, for the first time in these proceedings, that after they had provided respondent with their only records of the Oshtemo-Kalamazoo activity, respondent never returned them.  They argue that their failure to substantiate their right to the deductions and credits at issue can be traced to the claimed loss of these records by respondent. Citing Andrew Crispo Gallery, Inc. v. Commissioner, 16 F.3d 1336 (2d Cir. 1994), affg. in part, vacating and remanding in part T.C. Memo. 1992-106, petitioners contend that, because respondent lost their records, they are entitled to a presumption that their records would support their contention that they had an adequate profit motive for engaging in the Oshtemo-Kalamazoo activity.[5]

---

[4] We note that recent modifications to the burden of proof requirements in court proceedings are inapplicable here, as the examination in this case commenced before July 22, 1998.  See sec. 7491, as added by the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. 105-206, sec. 3001(a), 112 Stat. 685, 726-727; see also RRA sec. 3001(c), 112 Stat. 727.

[5] Our practice is not to consider new issues raised for the first time on reply brief.  See Rules 31(a), 41(a); Krause v. Commissioner, 99 T.C. 132, 177 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994); DiLeo v. Commissioner, 96 T.C. 858, 891 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  In view of petitioners' pro se status and the nature of the issue, however, we have exercised our discretion to permit further briefing with respect to petitioners' assertion that respondent has lost their records.  In this regard, we have decided to file and consider petitioner Abraham Weiss' letter that addresses arguments made in respondent's "Brief in Response
(continued...)

We disagree. The general rule applicable to a party having the burden of proof is that a loss of records may preclude proving a material fact. In Burnet v. Houston, 283 U.S. 223, 228 (1931), the Supreme Court explained: "The impossibility of proving a material fact upon which the right to relief depends simply leaves the claimant upon whom the burden rests with an unenforceable claim, a misfortune to be borne by him, as it must be borne in other cases, as the result of a failure of proof."

The Court of Appeals for the Second Circuit, in Andrew Crispo Gallery, Inc. v. Commissioner, supra, acknowledged that principle, but the majority of the Court of Appeals panel deciding that case determined that a different rule must apply when the Government itself is responsible for the taxpayer's inability to produce documentary evidence. In such a case, the majority considered two modifications to the holding of Burnet v. Houston, supra, appropriate:

> First, where the taxpayer's records have been seized and lost by the government, the trier should at least be permitted to infer that the true facts are as alleged by the taxpayer to be set forth in the documents seized and lost. Second, in those instances where the taxpayer can offer credible evidence that the seized and lost record was properly maintained by the taxpayer, prior to seizure, and accurately reflected the facts that the taxpayer alleges it purports to reflect, the taxpayer is entitled to a presumption that the record would so reflect those alleged facts. * * * [Andrew Crispo Gallery, Inc. v. Commissioner, supra at 1343-1344.]

---

5(...continued)
to Petitioners' Reply Brief". Cf. Ware v. Commissioner, 906 F.2d 62, 65-66 (2d Cir. 1990), affg. T.C. Memo. 1989-165.

In any event, however, "the ultimate burden of persuasion as to entitlement to a deduction would remain on the taxpayer." Id. at 1344.

The Court of Appeals' holding does not aid petitioners in this case. First, we do not accept petitioners' claims that respondent is responsible for their failure to produce documents relating to the Oshtemo-Kalamazoo activity. During the development of this case, petitioners steadfastly ignored respondent's valid requests for the production of documents. At the beginning of trial, they conceded that they did not have the records requested, and respondent agreed to rescind the demand for sanctions. At no time before trial did petitioners state that their inability to produce relevant documents was due to respondent's loss of those records. During the trial itself, Mr. Weiss frequently argued that, during the audit process, he had presented respondent with records relevant to the Oshtemo-Kalamazoo activity. Even then, Mr. Weiss did not assert that respondent had retained, and possibly lost, their records. The failure to make such an assertion persisted in petitioners' opening brief. It was not until their reply brief--which, in the normal course, would have been the last document submitted in the case--that petitioners made such a charge. Mr. Weiss is a certified public accountant who has testified as to his familiarity with respondent's audit processes. He was certainly aware of the importance of relevant documentary evidence in this case. If petitioners believed in good faith that respondent was

responsible for preventing their production of such documentary evidence, they would not have waited until their reply brief to say so.

Moreover, even if respondent had lost petitioners' records, we still would not hold for petitioners. Rule 1004 of the Federal Rules of Evidence provides that secondary evidence of a "writing, recording, or photograph" is admissible if the original is unintentionally lost. This rule alters the type of evidence that may be admissible. As the Court of Appeals recognized in Andrew Crispo Gallery, Inc. v. Commissioner, supra, however, the rule does not affect petitioners' burden of persuading the Court as to the existence of asserted facts. See Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979). The Court of Appeals' holding in Andrew Crispo Gallery still leaves petitioners both with the burden of establishing a basis for us to infer that the missing records contain the facts as alleged by them and with the requirement of producing credible evidence that the missing records were properly maintained and accurately reflected the facts as alleged. The record before us--consisting of Mr. Weiss' vague and self-serving testimony--establishes neither. Andrew Crispo Gallery does not provide taxpayers entitlement to otherwise unsubstantiated deductions or credits based on the bare assertion that their records have been lost by the Government, without further proof. See Rodman v. Commissioner, 542 F.2d 845, 853-854 (2d Cir. 1976), affg. in part, revg. in part and

remanding T.C. Memo. 1973-277.  Here, petitioners have provided no such further proof.

Delay of Deficiency Notice

In evaluating the evidence, we have remained cognizant of the long period of time between the last of the taxable years in issue, 1978, and the August 18, 1995, date that respondent mailed the statutory notice of deficiency to petitioners.  Before trial, however, petitioners stipulated that they did not contest whether the statutory period of limitations for assessing the deficiencies at issue has expired.  Mr. Weiss subsequently testified that he had executed documents extending indefinitely the time within which respondent might determine and assess taxes for the years at issue.  He has made no showing that he sought to terminate these extensions.  Accordingly, even if the issue of delay were properly before us, petitioners would not prevail. The appellate venue for this case would be the Court of Appeals for the Second Circuit, which has stated:  "the rule in this circuit * * * is that a long delay will not vitiate an indefinite extension absent notice from the taxpayer that he desires to bring the extension to a close."  Stenclik v. Commissioner, 907 F.2d 25, 28 (2d Cir. 1990), affg. T.C. Memo. 1989-516; see also Mecom v. Commissioner, 101 T.C. 374, 392 (1993) ("'A deal is after all a deal, and fairness dictates that both parties adhere to the provisions of the document they both voluntarily signed.'"

(quoting <u>Grunwald v. Commissioner</u>, 86 T.C. 85, 89 (1986))), affd. without published opinion 40 F.3d 385 (5th Cir. 1994).[6]

<u>Addition to Tax and Increased Interest</u>

Section 6653(a) imposes additions to tax where the taxpayer has acted negligently or with intentional disregard of rules and regulations. Petitioners bear the burden of proof on this issue. Rule 142(a); <u>Bixby v. Commissioner</u>, 58 T.C. 757, 791-792 (1972).

Petitioner Abraham Weiss is a certified public accountant who has testified to substantial experience in preparing tax returns. If there were convincing evidence available that petitioners neither negligently nor intentionally disregarded the applicable rules and regulations, Mr. Weiss, as an accountant, plainly knew the importance of producing it. Petitioners failed to adduce such evidence. We accordingly hold that they intentionally or negligently failed to follow rules and regulations and that they are chargeable with the addition to tax under section 6653(a).

Section 6621(c) (formerly section 6621(d)) provides for an increase in the interest rate where there is a substantial underpayment (i.e., one that exceeds $1,000) in any taxable year

---

[6] The petition claims that the delay in sending the notice of deficiency is respondent's fault, and it asserts that interest that has accrued on the deficiencies should be abated pursuant to sec. 6404(e). Consideration of petitioners' request for abatement of interest is premature, however, as there has been neither an assessment of interest nor a final determination by respondent not to abate the interest. See sec. 6404(e), (g), as currently in effect; see also <u>Bourekis v. Commissioner</u>, 110 T.C. 20, 26 (1998).

in which the underpayment is "attributable to 1 or more tax motivated transactions". Sec. 6621(c)(2). Temporary regulations adopted pursuant to section 6621(c)(3))(B), which are applicable to interest accruing after December 31, 1984, state that "Any deduction disallowed for any period under section 183" is subject to the provision for additional interest set forth in section 6621(c). Sec. 301.6621-2T, A-4(1), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50392 (Dec. 28, 1984). Here, respondent has explicitly determined that the deductions at issue are disallowed under section 183. Petitioners have not shown that determination to be erroneous. Respondent is therefore entitled to additional interest after December 31, 1984, on the portion of the deficiencies for 1976, 1977, and 1978 attributable to the disallowed deductions.

To give effect to concessions,

Decision will be entered

under Rule 155.
