T.C. Memo. 2015-214

UNITED STATES TAX COURT

MARK R. SMITH AND YONG N. SMITH, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22033-12, 29621-12.　　　　　Filed November 3, 2015.

Mark R. Smith, pro se.

<u>Bryant W. Smith</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined deficiencies in petitioners'

Federal income tax and penalties as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2009 | $13,732 | $2,746 |
| 2010 | 6,098 | 1,219 |

[*2] After concessions, we must decide whether Mr. Smith (petitioner)[1] is entitled

to amounts in excess of what respondent allowed for: (1) returns and allowances

reported on the Schedule C, Profit or Loss From Business, attached to the 2009

Federal income tax return (2009 return); (2) unreimbursed employee business

expenses reported on the Schedule A, Itemized Deductions, attached to the 2009

---

[1]Mrs. Smith submitted Forms 8857, Request for Innocent Spouse Relief, dated September 10, 2013, for the 2009 tax year and November 26, 2013, for the 2010 tax year. Respondent reviewed Mrs. Smith's Forms 8857 and determined that she should be granted relief from joint and several liability for 2009 and 2010 (years at issue) except for the unreported taxable State income tax refunds from the 2009 tax year. Petitioner refused to agree that Mrs. Smith should be granted relief from joint and several liability for the years at issue.

On December 16, 2014, respondent filed motions for partial summary judgment in docket Nos. 22033-12 and 29621-12. With the exception of the unreported taxable State income tax refunds from the 2009 tax year, respondent advanced the position that Mrs. Smith satisfied the requirements of sec. 6015(b)(1)(A)-(E) and was entitled to relief from joint and several liability.

Trials in docket Nos. 22033-12 and 29621-12 were held on November 18, 2014, in San Francisco, California. Mrs. Smith was financially unable to travel from Virginia to California for trial and was not present. The Court separated the issue of relief from joint and several liability to allow trial to be held on the other issues.

On April 17, 2015, the Court granted respondent's motions for partial summary judgment in docket Nos. 22033-12 and 29621-12. The Court ordered that Mrs. Smith was entitled to relief from joint and several liability from any understatement related to her and petitioner's 2009 and 2010 Federal income tax returns with the exception of understatements stemming from petitioners' failure to report taxable State income tax refunds for 2009. Because petitioner and Mrs. Smith conceded that they failed to report taxable State income tax refunds for 2009, that is not an issue before the Court. Consequently, the Court's decision in this case affects only petitioner.

[*3] return; and (3) cost of goods sold, rent or lease expenses, and interest expenses reported on the Schedule C attached to the 2010 Federal income tax return (2010 return). We must also determine whether petitioner is liable for section 6662(a)[2] accuracy-related penalties for the years at issue.

## FINDINGS OF FACT

These cases were consolidated for purposes of briefing and opinion. The parties' stipulations of facts, with attached exhibits, are incorporated herein by this reference. Petitioner lived in California when the petitions were filed.

The following table summarizes the amounts petitioner reported on his Federal income tax returns for the years at issue and the amounts respondent allowed and disallowed in the notices of deficiency:[3]

_____

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]Items not at issue are not shown.

| [*4] Year | Item | Amount claimed | Amount allowed | Amount disallowed |
|-----------|------|----------------|----------------|-------------------|
| 2009 | Schedule C returns and allowances | $45,021 | -0- | $45,021 |
| 2009 | Schedule A unreimbursed employee business expenses--travel while away from home overnight | 16,050 | -0- | 16,050 |
| 2009 | Schedule A unreimbursed employee business expenses--parking | 468 | -0- | 468 |
| 2009 | Schedule A unreimbursed employee business expenses--meals and entertainment | 113 | -0- | 113 |
| 2010 | Schedule C interest--other | 6,620 | -0- | 6,620 |
| 2010 | Schedule C rent/lease--other business property | 23,723 | $12,892 | 10,831 |
| 2010 | Schedule C interest | 8,425 | -0- | 8,425 |

1. Returns and Allowances

In 2008 petitioner manufactured 64 large area solar panels in Virginia while living there. He sold 46 of these solar panels in late 2008 and early 2009. In March 2009 petitioner sold eight of the panels to a customer, Michael Raines, in Los Angeles, California. Shortly after the panels were installed at a home, they caught fire, causing extensive damage. The fire prompted a government investigation which required petitioner to remove from the market all of the solar panels that he had sold.

**[\*5]**  On the Schedule C attached to the 2009 return petitioner reported zero gross receipts or sales and a total of $45,021 as returns and allowances.  At trial petitioner asked the Court to allow $24,325 for returns and allowances, $10,576 for the cost of the solar panels that were manufactured but never sold, $9,312.60 for solar panels that were purchased from petitioner using stolen credit cards, and $600 for his payments to Heritage Web Solutions.[4]

On March 29, 2009, petitioner paid Mr. Raines $7,512 by check.  Respondent conceded on brief that this amount should be allowed as a return or allowance.  On September 21, 2009, petitioner made a $13,300 wire transfer from his and Mrs. Smith's bank account to Empire Clean Energy Supply with a notation indicating it was for the "Reynolds Warranty Payment."  Petitioner claimed another customer had asked for replacement solar panels in lieu of a refund.  Petitioner introduced at trial a pro forma invoice from SET Solar Corp. showing that replacement panels would cost $3,513.

In 2009 after petitioner stopped selling the solar panels he had manufactured, he purchased solar panels from wholesalers and resold them on the Internet.  Petitioner claims he was notified after four of the orders had shipped that

---

[4]Petitioner did not explain the discrepancy between the amount of returns and allowances requested at trial and the amount reported on the 2009 return.

[*6] the purchases had been made with stolen credit cards. Though petitioner sought $9,312.60 at trial for purchases made with stolen credit cards, he introduced only the following withdrawals to support his claims:[5]

| Date | Amount | Type of withdrawal |
| --- | --- | --- |
| 7/24 | $2,486.20 | Bank card |
| 8/10 | 1,916.90 | Bank card |
| 10/2 | 2,220.20 | Bank card |
| 10/19 | 2,188.40 | Bank card |

At trial petitioner introduced no invoices or other proof of these alleged fraudulent purchases.

Petitioner hired Heritage Web Solutions to run his business' Web site. In late 2008 petitioner was promised an additional year of Web services if he prepaid $1,200. Petitioner did not produce any documentation of this agreement. The $1,200 was prepaid in four installments of $300 in November and December 2008 and February and March 2009. Petitioner introduced at trial proof of the two payments made in 2009. Heritage Web Solutions closed shortly after the last payment was made, and petitioner was without Internet support for the business.

---

[5]On October 1, 2009, $6,826.40 was withdrawn from the bank account via "Bams", but this amount was returned on November 2, 2009.

[*7] 2.  Unreimbursed Employee Business Expenses

After he was required to remove from the market all of the solar panels he had sold, petitioner sought other employment.  He obtained a visiting scholar position with Hewlett-Packard (HP) in California.  As a visiting scholar, petitioner was hired to work on a research project for the U.S. Army.  HP reimbursed petitioner $6,186 for the cost of his move from Virginia to California.  When petitioner moved, Mrs. Smith remained in Virginia.

Petitioner received an offer letter from HP, but it was not introduced at trial.  A copy of petitioner's Intern/Research Relocation Program Acknowledgment Letter, however, was introduced at trial.  It states, in part:  "[I]n the event you leave Hewlett-Packard, for any reason, during the term of your 3-12 month assignment * * * you will be required to repay Hewlett-Packard for the entire cost of your relocation benefits".  As long as the research went well and the U.S. Army provided funding for the project, there was some expectation that petitioner's employment would continue, but HP provided no assurances and petitioner's employment could have been terminated at any time.

According to a declaration from Ann Faustmann of HP, petitioner was employed from March 23, 2009, to November 1, 2012.  Petitioner, however, testified that his employment was not continuous during that period and that he

[*8] was "laid off" during the middle of December each year. Petitioner did not submit proof of these periods of unemployment, and he never applied for unemployment benefits.

Petitioner signed a lease for an apartment in California with Trinity Property Consultants in March 2009 that would last until April 30, 2010. Petitioner discovered that the complex had poor security when a shooting took place there in August 2009. Because the management did not intend to remedy the security issues, petitioner paid to terminate his lease and signed a new 12-month lease beginning on August 8, 2009, with Cupertino City Center in California.

3. Cost of Goods Sold

Petitioner reported cost of goods sold of $8,425 on his 2010 return, all of which respondent disallowed. Petitioner conceded at trial that the amount claimed on the return was incorrect and requested $1,575 for cost of goods sold. He produced a quote for 1,000 "Outback VFX3-24E, 3.0kW, 24V Inverter export[s]" from Wholesale Solar dated May 4, 2009, to support this assertion, testifying that it was his recollection that the date should have been May 4, 2010. The quote states the price per unit was $1,575, the subtotal was $1,575,000, and the quote total was "?".

**[*9]** 4. Rent/Lease Expenses

Petitioner reported $4,550 in gross receipts or sales on his 2010 return. Petitioner claimed a deduction for $23,723 in rent or lease expenses on the Schedule C attached to the 2010 return, $10,831 of which was related to his apartment in California. Respondent disallowed the portion of the deduction related to the apartment. Petitioner produced a copy of the apartment's floor plan and denoted the areas that he claimed to have used exclusively for business purposes. It indicated that petitioner used 53% of his apartment--the entire entry area, dining area, living area, and deck--exclusively for business purposes. The apartment's layout required petitioner to pass through these areas to enter the apartment itself, the bedroom, the bathroom, and the kitchen.

5. Interest Expenses

The claimed interest expenses were interest charges on credit card purchases and a personal loan. The credit card interest related to purchases made in earlier years as no purchases were made on the credit cards during 2010. No evidence other than petitioner's testimony was introduced to support the claim that the items purchased with the credit cards were used in petitioner's business. Petitioner did not testify or provide other evidence regarding the use of the personal loan proceeds.

**[*10]**                                    OPINION

We must determine whether petitioner is entitled to amounts in excess of what respondent allowed.  We must also decide whether petitioner is liable for section 6662(a) accuracy-related penalties.

I.  Items Disallowed by Respondent

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden to show that his determinations are incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[6]

Deductions are a matter of legislative grace, and the taxpayer bears the burden of establishing entitlement to any claimed deduction.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  In general, deductions are not allowed for personal, living, or family expenses.  Sec. 262(a).

Taxpayers are required to maintain sufficient records that substantiate the amount and purpose of each item for which they claim a deduction.  Sec. 6001;

---

[6]Petitioners have not claimed that the burden should shift to respondent, nor does the record show that shifting the burden would be appropriate in these cases. See sec. 7491(a).

[*11] Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. Generally, a taxpayer's self-serving declaration is not a sufficient substitute for records. Weiss v. Commissioner, T.C. Memo. 1999-17. Section 274(d) imposes strict substantiation requirements for certain deductible expenses, such as traveling expenses (including meals and lodging away from home) and entertainment expenses.

Returns and allowances and cost of goods sold are taken into consideration when determining a Schedule C business gross income. Deductions are subtracted from the Schedule C business gross income in order to determine its net profit or net loss. Accordingly, returns and allowances and cost of goods sold are not treated as deductions and are not subject to the limitations of section 162. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 661 (1987); Nunn v. Commissioner, T.C. Memo. 2002-250. Nevertheless, taxpayers must retain sufficient records to substantiate amounts claimed as returns and allowances or cost of goods sold. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

1. Returns and Allowances

On brief respondent conceded that petitioner is entitled to a $7,512 Schedule C adjustment to gross income for returns and allowances for the refund

[*12] issued to Mr. Raines in connection with the solar panels that caused the fire in Santa Monica, California.

Petitioner credibly testified that he was required to remove his business solar panels from the market because they caused a fire that damaged a home. Bank statements reflect that petitioner made a $13,300 wire transfer to Empire Clean Energy Supply on September 21, 2009, with a notation indicating it was for the "Reynolds Warranty Payment". We find this substantiation sufficient to allow petitioner to include this amount in returns and allowances on the 2009 Schedule C.

Petitioner also presented a pro forma invoice from SET Solar Corp. showing replacement solar panels would cost $3,513, but he did not provide any records to show that this amount was ever paid. Petitioner has provided insufficient substantiation to allow him to include this amount in returns and allowances on the 2009 Schedule C.

The amounts reported for payments to Heritage Web Solutions and alleged fraudulent purchases should not have been categorized as returns and allowances but potentially could be considered ordinary and necessary business expenses. See sec. 162(a). Petitioner did not introduce copy of the agreement with Heritage Web Solutions, and we cannot determine whether he reported this amount

**[*13]** elsewhere on the 2009 Schedule C.  In an attempt to substantiate the alleged fraudulent purchases petitioner provided only bank statements showing withdrawals made via bank card.  Petitioner has not produced sufficient substantiation to allow a deduction for either of these items.

It is unnecessary for us to address whether and where any amounts for the manufactured but unsold solar panels should have been reported on the 2009 return because petitioner failed to provide any substantiation to support his claims.

We find that petitioner is entitled to returns and allowances of $20,812 on his 2009 Schedule C.

    2.  <u>Unreimbursed Employee Business Expenses</u>

        a.  <u>Travel While Away From Home Overnight</u>

The expenses of maintaining a household, including rent and utilities, are not deductible.  Sec. 1.262-1(b)(3), Income Tax Regs.  However, to alleviate the burden on taxpayers whose business or employment requires them to incur duplicate living expenses, taxpayers may deduct traveling expenses, such as meals and lodging, if such expenses are:  (1) ordinary and necessary; (2) incurred while away from home; and (3) incurred in the pursuit of a trade or business.  Sec. 162(a)(2); see <u>Commissioner v. Flowers</u>, 326 U.S. 465, 470 (1946); <u>Tucker v.</u>

**[*14]** Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968).

For purposes of section 162(a)(2) a taxpayer's "home" is generally the vicinity of the taxpayer's principal place of employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190, 195 (1979), aff'd, 662 F.2d 253 (4th Cir. 1981). A taxpayer's residence, when outside the vicinity of the taxpayer's principal place of employment, may be treated as the taxpayer's tax home if the taxpayer's employment is "temporary" rather than "indefinite." Peurifoy v. Commissioner, 358 U.S. 59, 60 (1958). However, "if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner, 49 T.C. at 562.

This Court has found that employment is "temporary" if it is the type which can be expected to last only for a short period. Albert v. Commissioner, 13 T.C. 129, 131 (1949). We have found employment is "indefinite" if "its termination cannot be foreseen within a fixed or reasonably short period of time." Stricker v. Commissioner, 54 T.C. 355, 361 (1970), aff'd, 438 F.2d 1216 (6th Cir. 1971). An appeal in this case would lie in the Court of Appeals for the Ninth Circuit, which

[*15] disagreed with this test in Harvey v. Commissioner, 283 F.2d 491 (1959) (9th Cir. 1960), rev'g and remanding 32 T.C. 1368 (1959). In Harvey, the Court of Appeals, drawing from the legislative purpose of section 162(a)(2), focused its determination on whether it was reasonable under the circumstances to expect a taxpayer to move. See also Wright v. Hartsell, 305 F.2d 221, 223-224 (9th Cir. 1962). The location of a taxpayer's tax home and whether a taxpayer's employment was temporary rather than indefinite are questions of fact to be decided on the entire record. See Peurifoy v. Commissioner, 358 U.S. at 60-61; Commissioner v. Flowers, 326 U.S. at 470.

The record contains relatively little information regarding petitioner's employment with HP. His position had an initial term of 3 to 12 months, and he ended up working for HP for more than three years. At the time petitioner was hired there was an expectation that his employment would continue if the research went well and the project continued to receive funding from the U.S. Army.

Petitioner's actions evidence his expectation that the research project would continue for an indefinite time. If petitioner had truly believed that his position in California was temporary, it is doubtful that he would have immediately entered into a yearlong lease in March 2009 or entered into a yearlong lease five months later in August 2009. Further, in December 2009 when petitioner was temporarily

[*16] laid off, he did not seek unemployment benefits. It is highly unlikely that petitioner would fail to seek unemployment benefits if he did not believe he was going to be reemployed in the near future.

On the basis of the facts, we find that petitioner's employment in California was indefinite, and it would have been reasonable under the circumstances to expect him to move there. See Harvey v. Commissioner, 283 F.2d at 495-496; Stricker v. Commissioner, 54 T.C. at 361. Accordingly, we hold petitioner is not entitled to a deduction for expenses while traveling away from home because California was his tax home.

### b. Parking Fees, Tolls, and Transportation

Petitioner provided no records to substantiate the amounts claimed for parking fees, tolls, and transportation on the 2009 return. Accordingly, he is not entitled to a deduction. See sec. 6001.

### c. Meals and Entertainment

Petitioner provided no records to substantiate the amounts claimed for meals and entertainment on the 2009 return. Accordingly, he is not entitled to a deduction. See id.

**[*17]** 3. <u>Cost of Goods Sold</u>

At trial petitioner admitted that the amount reported on the return was incorrect and requested $1,575 for the cost of goods sold. To support his request, he produced a quote from Wholesale Solar dated May 4, 2009, and testified that he believed the date was incorrect and should have been May 4, 2010. The quote was for 1,000 "Outback VFX3-24E, 3.0kW, 24V Inverter export[s]" with a subtotal of $1,575,000, and a quote total of "?". The quote from Wholesale Solar coupled with petitioner's testimony is insufficient to substantiate cost of goods sold. <u>See</u> sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Petitioner is not entitled to any cost of goods sold on his 2010 Schedule C.

4. <u>Rent/Lease Expenses</u>

Section 280A(a) generally disallows a deduction for business use of a taxpayer's personal residence. A taxpayer, however, may deduct expenses allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or business or a place of business which is used by clients or customers in meeting or dealing with the taxpayer in the normal course of the trade or business. Sec. 280A(c)(1)(A) and (B). "Exclusive use" requires that a taxpayer use a "specific part of a dwelling unit solely for the purpose of carrying on his trade or business. The use of a

**[\*18]** portion of a dwelling unit for both personal purposes and for the carrying on of a trade or business does not meet the exclusive use test." Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987) (quoting S. Rept. No. 94-938, at 148 (1976), 1976-3 C.B. (Vol. 3) 49, 186, and H.R. Rept. No. 94-658, at 161 (1975), 1976-3 C.B. (Vol. 2) 695, 853).

Petitioner testified that he used his apartment's entry, dining and living areas, and deck exclusively for business purposes. The only other evidence offered to support petitioner's testimony was a floor plan of the apartment on which he denoted the area used for business purposes. Though petitioner claims he met clients in his apartment, no testimony or other evidence from clients was presented at trial.

We are not required to find petitioner's unsupported and self-serving testimony sufficient to prove that he used his apartment's entry, dining and living areas, and deck exclusively as his principal place of business or as a place to meet clients. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Petitioner has not met his burden of proving that he used a portion of his home exclusively for his business and is not entitled to a deduction for 2010 Schedule C rent or lease expenses in excess of the amount respondent allowed.

**[*19]** 5. <u>Interest Expenses</u>

Petitioner introduced monthly statements for credit cards and a personal loan to substantiate the amounts of interest paid. Petitioner testified that the credit cards were used to make business purchases in earlier tax years, but he did not provide substantiation for these purchases. He did not testify or provide other evidence with respect to the use of the personal loan proceeds. Without substantiation to show that the interest expenses are ordinary and necessary business expenses, we cannot allow a deduction. <u>See</u> secs. 162(a), 6001. Petitioner is not entitled to a 2010 Schedule C deduction for interest expenses.

II. <u>Section 6662 Penalties</u>

An accuracy-related penalty of 20% is imposed on the portion of an underpayment attributable to negligence or a substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2). Negligence includes any failure to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d).

The Commissioner bears the burden of production with respect to a taxpayer's liability for any accuracy-related penalty. Sec. 7491(c). The

[*20] Commissioner "must come forward with sufficient evidence indicating that it is appropriate to impose" the accuracy-related penalty in order to meet this burden. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner provides sufficient information to satisfy his burden of production, the burden shifts to the taxpayer to show that the penalty should not be imposed. Id. at 447; see Rule 142.

Respondent has met his burden of production by showing that petitioner lacks adequate records to fully substantiate the amounts reported on the 2009 and 2010 returns. See sec. 1.6662-3(b)(1), Income Tax Regs. The precise amounts of petitioner's underpayments will depend upon the Rule 155 computations, in accordance with our findings and conclusions set forth above. To the extent that such computations establish, as seems likely, that petitioner's understatements of income tax were substantial, respondent has also met his burden of production in this regard. See Diallo v. Commissioner, T.C. Memo. 2011-300.

Petitioner failed to argue or offer evidence that reduced penalties should be imposed. See sec. 6664(c). Accordingly, we find petitioner is liable for section 6662(a) accuracy-related penalties for the years at issue.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

**[\*21]** To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.