T.C. Summary Opinion 2010-127

UNITED STATES TAX COURT

SVEND F. AND MISCHELLE T. STENSLET, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23402-05S.                    Filed August 30, 2010.

Svend F. and Mischelle T. Stenslet, pro sese.

<u>Beth A. Nunnink</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463.[1]  Pursuant to section 7463(b),
the decision to be entered is not reviewable by any other court,

_____

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code of 1986, as amended, in effect
for the relevant period.  Rule references are to the Tax Court
Rules of Practice and Procedure.

and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated November 7, 2005, respondent determined the following deficiencies in, and penalties with respect to petitioners' Federal income taxes:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 2002 | $6,366 | $1,273.20 |
| 2003 | 6,184 | 1,236.80 |
| 2004 | 8,977 | 1,795.40 |

After concessions, the issues for decision are as follows: (1) Whether petitioners were engaged in the trade or business of farming during any of the years in issue; (2) whether for 2003 and/or 2004 certain expenditures incurred by Mischelle T. Stenslet to qualify her as a massage therapist are deductible as trade or business expenses; (3) whether certain expenditures incurred by Svend F. Stenslet in connection with his employment as a commercial pilot are nondeductible personal expenses or deductible as unreimbursed employee business expenses; (4) whether petitioners are entitled to a deduction for the mechanical failure of a lawnmower during 2004; and (5) whether petitioners are liable for section 6662(a) accuracy-related penalties for any of the years in issue.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed and at all times relevant here, petitioners resided in Tennessee.

### Petitioners' Employment Backgrounds

1. Svend F. Stenslet (Petitioner)

At all times relevant to this proceeding petitioner was employed full time as a pilot for United Express Airlines (Airlines). In connection with that employment he performed services as both a pilot and a flight simulator trainer. Petitioner's flight assignments during the years in issue originated and terminated at Dulles International Airport (Dulles) in Sterling, Virginia. In connection with his flight assignments he routinely drove from his residence in Tennessee to a nearby airport and then flew to Dulles in order to arrive in sufficient time for his flight assignment. Upon returning to Dulles when his flight assignment terminated, he returned to his home in Tennessee.

Sometimes petitioner's flight assignments required that he spend the night near Dulles. Accordingly, from 2002 through 2004 petitioner incurred expenses for lodging in Sterling. He also incurred lodging expenses in Sterling for the period that he remained in the area for training purposes. From time to time petitioner kept a car in the Dulles area.

As an Airlines pilot, petitioner was entitled to and received a per diem allowance in connection with his flight assignments. The per diem allowance began accruing 1 hour before the check-in time at Dulles and stopped accruing 1-1/2 hours after arrival back at Dulles. Most of petitioner's flight assignments began and ended on the same day. If petitioner's flight assignment required that he spend a night away from the Dulles area, then Airlines paid the expense of the overnight lodging.

2. Mischelle T. Stenslet (Mrs. Stenslet)

As best as can be determined from the record, Mrs. Stenslet was employed as a registered nurse during each year in issue. At some point in her career as a registered nurse, Mrs. Stenslet became interested in becoming a licensed massage therapist. Starting in 2003 she began to pursue that interest.

Petitioners' Farming Activity

In the early 1990s Mrs. Stenslet's mother purchased 78 acres in Tennessee described by petitioners as "untouched land" consisting of fields and wooded areas covered in blackberry bushes (the property). In 1997 petitioners, who expected that they would "inherit at least a quarter" of the property, decided to locate their residence there. They first began to live on the property in a mobile home. Over the years they transformed the

property from what was essentially undeveloped land to land suitable to support a permanent residence.

During 2002 petitioners purchased approximately 20 chickens and 2 emus. From time to time during that year they sold chicken eggs for $1 a dozen. They also sold unspecified amounts of emu feathers, apparently used to make lures for fly fishing purposes.

In 2003 petitioners purchased a goat and a horse. The goat was sold soon after it was purchased because, according to petitioners, it was "scary".

Although it is not entirely clear from the record, during 2004 petitioners might have purchased another horse. During that year electric fencing was installed on the property.

Petitioners did not maintain formal books of account with respect to any income generated from, or expenses incurred in connection with, the chickens, horse(s), emus, and (if only for a brief period) the goat maintained on the property. They did, however, keep receipts evidencing the purchase of feed, fencing, and various other supplies used or consumed in connection with the maintenance of those animals.

Petitioners' Federal Income Tax Returns

For each year in issue petitioners' timely filed joint Federal income tax return was prepared by a paid income tax return preparer. As relevant here, the contents of each return are summarized below.

1. 2002

Petitioners' 2002 return includes: (1) A Schedule A, Itemized Deductions; (2) a Form 2106, Employee Business Expenses, relating to petitioner's employment as a pilot; and (3) a Schedule F, Profit or Loss From Farming.

On the Schedule A petitioners claimed an employee business expense deduction[2] of $17,469 attributable to various expenses (the majority of which are identified on the Form 2106) petitioner incurred for lodging, meals, and the use of a vehicle while he was working as an Airlines pilot and away from his residence in Tennessee.

The Schedule F lists the principal product as "other animal". Income of $250 is reported and deductions totaling $12,389 are claimed on the Schedule F. The resultant loss, $12,139, is taken into account in the adjusted gross income shown on the return.

2. 2003

Petitioners' 2003 return includes: (1) A Schedule A; (2) a Form 2106 relating to petitioner's employment as a pilot; (3) a Schedule F; and (4) a Schedule C, Profit or Loss From Business, showing Mrs. Stenslet as the proprietor.

---

[2]Amounts shown for this item each year are before the application of sec. 67(a).

On the Schedule A petitioners claimed an employee business expense deduction of $16,303 attributable to various expenses (the majority of which are identified on the Form 2106) petitioner incurred for lodging, meals, and the use of a vehicle while he was working as an Airlines pilot and away from his residence in Tennessee.

The Schedule F lists the principal product as "other poultry produc". Income of $636 is reported and deductions totaling $15,219 are claimed on the Schedule F. The resultant loss, $14,583, is taken into account in the adjusted gross income shown on the return.

The Schedule C identifies the "principle [sic] business or profession" as "other personal care". No income is reported on the schedule. Deductions are claimed for depreciation and supplies expenses totaling $1,124, which is the amount of the resultant loss taken into account in the adjusted gross income shown on the return. As best as can be determined from the record, the expenses relate to expenses Mrs. Stenslet incurred in pursuit of her intention to become a massage therapist.

3. <u>2004</u>

Petitioners' 2004 return includes: (1) A Schedule A; (2) a Form 2106 relating to petitioner's employment as a pilot; (3) a Schedule F; (4) a Schedule C, showing Mrs. Stenslet as the "proprietor"; and (5) a Form 4797, Sales of Business Property.

On the Schedule A petitioners claimed an employee business expense deduction of $17,308 attributable to various expenses (the majority of which are identified on the Form 2106) petitioner incurred for lodging, meals, and the use of a vehicle while he was working as an Airlines pilot and away from his residence in Tennessee.

The Schedule F lists the principal product as "horses and other equ". Income of $750 is reported and deductions totaling $19,889 are claimed on the Schedule F. The resultant loss, $19,139, is taken into account in the adjusted gross income shown on the return.

The Schedule C identifies the "principle [sic] business or profession" as "other personal care". No income is reported on the schedule. Deductions are claimed for depreciation and utilities expenses totaling $2,459, which is the amount of the resultant loss taken into account in the adjusted gross income shown on the return. As best as can be determined from the record, the expenses relate to Mrs. Stenslet's intention to become a massage therapist.

The Form 4797 shows a loss of $1,075 relating to a mechanical failure of a lawnmower, which loss is taken into account in the adjusted gross income shown on the return.

The Notice of Deficiency

Some of the adjustments made in the above-referenced notice of deficiency have been agreed to between the parties or conceded, and other adjustments are computational. Those adjustments will not be discussed.

In the notice of deficiency respondent disallowed: (1) With minor exceptions, the employee business expense deduction claimed for each year; (2) the net losses shown on the Schedules F for 2002 and 2003; (3) all of the deductions claimed on the Schedule F for 2004; (4) all of the deductions claimed on the Schedules C for 2003 and 2004; and (5) the loss claimed on the Form 4797 for 2004. Respondent also imposed a section 6662(a) accuracy-related penalty for each year in issue.

## Discussion

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of proof to establish entitlement to any claimed deduction.[3] Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.

---

[3]Petitioners do not claim that the provisions of sec. 7491(a) are applicable, and we proceed as though they are not.

Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. See sec. 6001; Hradesky v. Commissioner, supra; sec. 1.6001-1(a), Income Tax Regs.

The types of deductions here in dispute are allowable, if at all, under section 162(a). That section generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The term "trade or business" as used in section 162(a) includes the trade or business of being an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970); Christensen v. Commissioner, 17 T.C. 1456, 1457 (1952). The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). On the other hand, section 262(a) generally disallows a deduction for personal, living, or family expenses.

Set against these fundamental principles, we turn our attention first to the deductions here in dispute.

Schedule F and Schedule C Deductions

Consistent with the manner in which petitioners filed their 2002, 2003, and 2004 returns, they contend that the deductions claimed on the Schedules F and Schedules C are allowable as trade or business expenses. Respondent argues that those deductions are not allowable under section 162(a) because, according to respondent, neither petitioners' farming activity nor Mrs. Stenslet's massage therapist activity constitute a trade or business during the years in issue.

1. Schedule F Deductions

Giving petitioners the benefit of the doubt, it appears that the property very well might have been suitable for some farming activity. We also note that the animals that they owned and maintained over the years might be generally classified as "farm animals". Living on property suitable for farming and owning a few farm animals, however, does not, without more, establish that petitioners were in the trade or business of farming during any of the years in issue.

We recognize that for purposes of deductions allowable under section 162(a), the term "trade or business" is not precisely defined in the Internal Revenue Code. Nevertheless, in considering whether an activity constitutes a trade or business for purposes of section 162(a), we apply a "common-sense" approach to examine whether the activity was conducted "with

continuity and regularity" for the "purpose of a livelihood or profit". Commissioner v. Groetzinger, 480 U.S. 23, 28, 35 (1987).

In so doing we find the record to be sorely lacking in the details necessary to consider petitioners' farming activity to be a trade or business.[4]  Petitioners' generalized explanation of the property and the animals maintained there does little more than describe a family that resides in a rural setting.  Their description hardly suggests, much less establishes, that they were engaged in a farming trade or business during any of the years in issue.  Respondent's disallowances of the losses shown on the Schedules F for 2002 and 2003 are sustained, as are respondent's disallowances of all of the deductions claimed on the Schedule F for 2004.[5]

2. Schedule C Deductions

Although the expenses are not so described on either Schedule C, Mrs. Stenslet testified that the Schedule C

---

[4]Little point would be served by including a detailed analysis of the factors normally taken into account in considering a taxpayer's profit motive.  See sec. 1.183-2(b), Income Tax Regs.  The lack of evidence on many of the factors leads to the inescapable conclusion that petitioners' farming activity was not conducted with an objective intent to profit during any of the years in issue.  See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

[5]Deductions up to the amount of income shown on the Schedule F for 2004 should be allowed.  See sec. 183(a) and (b).

deductions reported on petitioners' 2003 and 2004 returns relate to educational expenses incurred in pursuit of her certification as a massage therapist. The record does not allow for an informed finding on whether the expenses are accurately described on the returns or by the testimony of Mrs. Stenslet. Be that as it may, as of the close of 2004 she had not obtained that certification and she was not performing services as a massage therapist. Because Mrs. Stenslet was not yet in a trade or business of being a massage therapist at the time the expenses were incurred, petitioners may not deduct the expenses under section 162(a). See Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds 382 U.S. 68 (1965). Furthermore, if the expenses were educational, petitioners would not be entitled to a deduction for the expenses because the expenses were incurred as part of a program designed to qualify Mrs. Stenslet for a new trade or business. See sec. 1.162-5(b)(3), Income Tax Regs.

Schedule A Deductions

The employee business expense deduction petitioners claimed for each year in issue relates to petitioner's employment with Airlines. In general, the deductions consist of the following items: (1) Vehicle expenses; (2) parking fees and tolls expenses; (3) meals and lodging; (4) union dues; (5) uniforms for

work; (6) small tools for work; (7) job supplies; and (8) other business expenses not specifically identified or explained.

    1. <u>Vehicle Expenses, Parking Fees and Tolls, and Meals and Lodging</u>

The expenses in this category relate to the amounts expended by petitioner in traveling back and forth from his residence in Tennessee to Sterling, Virginia, and for expenses incurred for meals, lodging, and vehicle expenses while present in Sterling. According to petitioners, those expenses are properly deductible as travel expenses petitioner incurred while traveling away from home as an employee of Airlines. According to respondent, those expenses represent nondeductible personal, living, or family expenses.

In general, expenses incurred for a taxpayer's meals, lodging, and for commuting between the taxpayer's residence and the taxpayer's place of business are nondeductible personal expenses. Sec. 262(a); see, e.g., <u>Commissioner v. Flowers</u>, 326 U.S. 465, 472-473 (1946); see also secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs. On the other hand, traveling expenses, including amounts expended for meals and lodging (other than amounts that are lavish or extravagant under the circumstances), may be deducted if they are incurred while away from home in connection with employee's employment. Sec. 162(a)(2); <u>Primuth v. Commissioner</u>, 54 T.C. at 377. The word "home" in section 162(a)(2) means the taxpayer's tax home.

Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Foote v. Commissioner, 67 T.C. 1, 4 (1976); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968).

The dispute between the parties reduces to their disagreement regarding the location of petitioner's tax home during the years in issue. According to petitioners, petitioner's tax home was defined by the location of their residence in Tennessee, and traveling expenses incurred in connection with traveling to, or remaining in, Sterling are deductible under section 162(a)(2). According to respondent, petitioner's tax home was Sterling, and expenses incurred to travel there and any expenses incurred for meals, lodging, and vehicle expenses while present in Sterling are not deductible because the expenses are personal in nature. For the following reasons, we agree with respondent.

Generally, a taxpayer's tax home is determined by the location of the taxpayer's regular or principal (if more than one regular) place of business. Mitchell v. Commissioner, supra at 581; Kroll v. Commissioner, supra at 561-562; cf. sec. 1.911-2(b), Income Tax Regs.

As an Airlines employee, petitioner was based at Dulles during each year in issue and his flight assignments began and ended there. It follows that Dulles was petitioner's regular or principal place of business, and Sterling was his tax home during

those years.  Consequently, expenses for meals and lodging incurred in Sterling may not be deducted under section 162(a) because those expenses were not incurred while petitioner was away from home.  Furthermore, because a taxpayer's cost of commuting between the taxpayer's personal residence and place of employment, no matter how far, is a nondeductible personal expense, Commissioner v. Flowers, supra at 473-474; secs. 1.162-2(e), 1.262-1(b)(5), Income Tax Regs., petitioner is not entitled to a deduction for amounts incurred to travel between petitioner's residence in Tennessee and Sterling, or for vehicle expenses incurred while in Sterling.

2. Union Dues, Uniforms, Small Tools, Job Supplies, and Other Business Expenses

Respondent has conceded that petitioners have substantiated and are otherwise entitled to deduct various amounts for each category of the above-listed expenses.  Petitioners have failed to establish that they are entitled to additional amounts for these expenses to the extent necessary to exceed the limitations imposed by section 67(a).[6]  Respondent's adjustments with respect to these items are sustained.

---

[6]Sec. 67(a) provides that unreimbursed employee business expenses otherwise deductible may only be deducted to the extent that the expenses exceed 2 percent of the taxpayers' adjusted gross income.

Loss Attributable to Lawnmower

Petitioners' 2004 return includes a Form 4797 on which petitioners reported a capital loss of $1,075 attributable to a lawnmower purchased in 2002. According to petitioners, the mechanical failure of the lawnmower should be treated as a loss resulting from the involuntary conversion of property used in a trade or business. See secs. 165(a), (c)(1) and (2), 1231(a)(4)(B). According to respondent, petitioners are not entitled to any loss deduction because the lawnmower was not used in a trade or business or held in connection with a transaction entered into for profit.

As relevant here, a loss from the destruction, in whole or in part, of property used in the taxpayer's trade or business, or held in connection with a transaction entered into for profit, shall be treated as loss from an involuntary conversion. Sec. 1231(a)(4)(B). According to petitioners, the lawnmower was used in their farming activity, which they considered to be a trade or business.

Because we have found that petitioners' farming activity did not constitute a trade or business for purposes of section 162(a), and because there is no support in the record for a finding that petitioners' farming activity was entered into for

profit, it follows that petitioners are not entitled to a deduction for the loss from the destruction of the lawnmower.[7]

The Accuracy-Related Penalties

Lastly, we consider whether petitioners are liable for a section 6662(a) accuracy-related penalty for any of the years in issue.

Various grounds for the imposition of that penalty are set forth in the notice of deficiency. Nevertheless, if it is shown that petitioners acted in good faith and there is reasonable cause for the underpayment of tax for each year, then the section 6662(a) accuracy-related penalty is not applicable to any of those years. See sec. 6664(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

For each year in issue, petitioners relied upon a paid income tax return preparer to prepare their Federal income tax return and to compute the Federal income tax liability shown on the return. We are satisfied that petitioners had reasonable cause and acted in good faith with respect to the underpayment of tax that will remain for each year. See sec. 6664(c). They are not liable for the section 6662(a) accuracy-related penalty for any year in issue.

_____

[7]There is insufficient evidence in the record to allow us to consider whether the loss resulted from a "casualty". See sec. 165(c)(3).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.